**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HEALTH ALLIANCE PLAN OF
MICHIGAN, HAP PREFERRED, INC., and
ALLIANCE HEALTH AND LIFE INS. CO.,

                                                    Case No. 14-13788

       Plaintiff,

                                                    HON. DENISE PAGE HOOD

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN
MUTUAL INSURANCE COMPANY,

       Defendant.
_____/

**ORDER DENYING WITHOUT PREJUDICE**
**BLUE CROSS' MOTION TO DISQUALIFY,**
**GRANTING BLUE CROSS' MOTION TO STAY**
**AND SETTING DATES**

**I.     BACKGROUND**

On October 1, 2014, Plaintiffs Health Alliance Plan of Michigan, HAP

Preferred, Incorporated, and Alliance Health and Life Insurance Company

(collectively, "Plaintiffs" or "HAP") filed a Complaint against Defendant Blue Cross

Blue Shield of Michigan Mutual Insurance Company ("Blue Cross"), amended on

November 21, 2014, alleging five counts:  Unlawful Agreement in violation of

Sherman Act § 1 (Count I); violation of M.C.L. § 445.772, Michigan Antitrust Reform

Act (Count II); Monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2

(Count III); Monopolization under M.C.L. § 445.773 (Count IV); and Tortious Interference with Prospective Advantage (Count V).

HAP alleges that Blue Cross, the dominant provider of health insurance in Michigan for decades, implemented a scheme to protect its dominant position and thwart competition from HAP and other competitors. (Comp., ¶ 1) Blue Cross entered into "MFN-plus" contracts with hospitals under which hospitals were required to increase the rates they charged to Blue Cross' competitors, preventing Blue Cross' competitors from purchasing hospital services at prices that were more competitive with Blue Cross. (Comp., ¶ 1) Some of Blue Cross' exclusionary MFN-plus contracts required hospitals to charge HAP (and others) substantially more than Blue Cross–as much as 39 percent more, which reduced competition in the sale of health insurance in the relevant market by inhibiting hospitals from negotiating competitive contracts with Blue Cross' competitors. (Comp., ¶ 3) Blue Cross referred again and again to its better discounts from providers in its sales communications to customers, to agents, and to consultants. (Comp., ¶ 4)  In 2013, the State of Michigan prohibited the use of most favored nations clauses as possible violations of the Michigan Insurance Code, but Blue Cross' use of MFN-plus clauses in the 2007-2012 period caused substantial damages to HAP.  (Comp., ¶ 5) Even though the MFN-plus clauses no longer exist, the damage to HAP and the harm to competition continue.  (Comp., ¶ 5)

2

This matter is before the Court on Blue Cross' Motion to Disqualify HAP's counsel and to stay the proceedings until the Court's ruling on the Motion to Disqualify. Responses and replies have been filed. At the hearing in this matter, the Court stayed the matter pending resolution of the Motion to Disqualify.

## II.   ANALYSIS

Blue Cross claims that HAP's counsel, David Ettinger and the Honigman firm, represented multiple hospitals and the Michigan Health and Hospital Association as both defendants and witnesses in the other anti-trust cases filed before this Court in 2010. The Honigman firm argued in those cases that the MFNs did not violate the antitrust laws and Honigman's hospital clients testified under oath that the MFNs had no effect on prices charged to Blue Cross' rival insurers. Blue Cross asserts that the Honigman firm in its argument on behalf of the hospitals in the other matters argued that each of the hospitals, was a party to the agreements with Blue Cross. The Honigman firm on behalf of HAP now argues that those hospitals' agreements with the MFNs raised the prices hospitals charged Blue Cross' rivals and resulted in hospitals, including the hospitals represented by Honigman, being overpaid. Blue Cross argues that this claim contradicts Honigman's own prior arguments and its hospital clients' sworn testimony and documents.

Blue Cross claims that Honigman also demanded an "illegal secret side

payment" of $42 million dollars to HAP, or else HAP would sue Blue Cross. Honigman represented that HAP's lawsuit would likely benefit from harmful evidence that Honigman suggested would be developed in different MFN litigation–a litigation in which Honigman represents several hospital witnesses.  Blue Cross asserts that Honigman's conduct violates multiple ethical rules and puts Honigman squarely adverse to its own hospital clients.  Honigman's representation of HAP undermines the integrity of the judicial process, prejudices Blue Cross' right to fair proceedings, and violates Honigman's duty of loyalty to its clients.  Blue Cross claims the only remedy is to disqualify the Honigman firm, specifically Mr. Ettinger, from their overlapping and conflicting roles.

Honigman responds that Blue Cross has no standing to raise this issue since Blue Cross has no attorney-client relationship with Honigman.  Honigman claims there is no adversary relationship between HAP and its hospital clients since HAP did not sue the hospitals.  Honigman claims that the "illegal" payment demand was merely good-faith settlement negotiations with Blue Cross before filing the lawsuit.

Disqualification of counsel is appropriate if: 1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; 2) the subject matter of those relationships was/is substantially related; and 3) the attorney acquired confidential information from the party seeking

4

disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern of Ohio*, 900 F.2d 882, 889 (6th Cir. 1990); *Bowers v. Ophthalmology Group*, 733 F.3d 647, 651 (6th Cir. 2013). A motion to disqualify counsel may be a legitimate tool to protect the integrity of judicial proceedings. *MJK Family LLC v. Corporate Eagle Management Services, Inc.,* 676 F. Supp. 2d 584, 592 (E.D. Mich. 2009). Because the "ability to deny one's opponent the services of capable counsel is a potent weapon," courts must be vigilant in reviewing disqualification motions. *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.3d 222, 224 (6th Cir. 1988). The court must balance the interest of the court and the public in upholding the integrity of the legal profession against the right of a party to retain counsel of its choice. *Id.* at 225. The movant bears the burden of proving that opposing counsel should be disqualified. *MJK*, 676 F. Supp. 2d at 592. An evidentiary hearing is not required, but the decision to disqualify counsel must be based on a factual inquiry. *Id.*

Applying the first prong of the three-prong test in *Dana*–a past attorney-client relationship between Blue Cross and HAP's counsel, the Honigman firm–it is clear that this prong has not been met since there has been no attorney-client relationship between Blue Cross and the Honigman firm. However, in *Gaspar v. Dicks,* 2011 WL 5975067 (E.D. Mich. 2011), the district court ruled that an opposing party with no attorney-client relationship with opposing counsel may raise the conflict of interest

5

issue, in light of the Michigan Rule of Professional Conduct ("MRPC") 1.7, which applies to this District under Local Rule 83.22(b).  The district court in *Gaspar* cited *Gordon v. Norman*, 788 F.2d 1194 (6th Cir. 1986) to support its ruling.  In *Gordon*, a § 1983 case, the defendants raised a conflict argument that their counsel, who also represented the city which was not a party to the lawsuit, did not represent their interests, but only the city's interest in light of the settlement issue.  *Id.* at 1199. Although the Sixth Circuit ruled that the defendants were not prejudiced by their counsel's actions, the Sixth Circuit noted that there is a need for sensitivity to the risk of conflict in § 1983 suits and that the judge and the parties have joint responsibility to guard interests that are actually threatened.  *Id.*

As noted in Local Rule 83.22(b), the MRPC applies to members of the bar of this court and attorneys who practice in this court and that any violation of those rules is ground for discipline.  E.D. Mich. LR 83.22(b).  MRPC 1.7 provides that a lawyer shall not represent a client if the representation of that client will be directly adverse to another client or the representation of that client may be materially limited by the lawyer's responsibilities to another client, unless the lawyer reasonably believes the representation will not adversely affect the relationship with the other client, and each client consents after consultation.  MRPC 1.7(a) and (b).  The staff comment to MRPC 1.7 allows opposing counsel to raise the conflict issue, "[w]here the conflict is such

6

as clearly to call in question the fair or efficient administration of justice, ...", but "[s]uch an objection should be viewed with caution, however, for it can be misused as a technique of harassment."  MRPC 1.7, Comments.

Based on MRPC 1.7, the Court finds that Blue Cross has the ability to raise the conflict issue, even if it does not have a prior attorney-client relationship with the Honigman firm.  A review of the parties' submissions, specifically that of the HAP's response, shows that HAP has not met MRPC 1.7 which requires that the Honigman firm must show that it "reasonably believes the representation will not adversely affect the relationship with the other client" and that "each client consents after consultation."  Honigman submits the affidavit of Dan Champney, the Deputy General Counsel of HAP and an expert declaration of Robert E. Hirshon as to whether an ethical violation has arisen.  The issue before the Court is not whether the Honigman firm violated any ethical issues since the Court is not sitting as an arbiter of such, but whether the fair or efficient administration of justice is being followed in  this case.

There is no dispute that the Honigman firm represented and currently represents many hospitals which were parties to the other cases before this Court (and now dismissed), but were also witnesses in the numerous discovery matters in those cases. At oral arguments, the Court inquired whether all the hospital clients represented by Honigman in the other cases were aware of Honigman's representation of HAP in this

case, HAP's counsel responded that he had notified the hospital clients, but he had not sought formal consent from the hospital clients to represent HAP.  Honigman's counsel indicated he had notified the hospital clients and that they may further inquire about the matter, but that he received no request for further information from any of the hospital clients.

Although the hospitals are not parties in this case, the MFNs were entered into between Blue Cross and many hospitals, including Honigman's clients.  In HAP's Complaint, it is alleged that the MFNs, which were entered into between Blue Cross and the hospitals, caused HAP injury.  Based on these allegations alone, without even delving into which hospitals are at issue, by entering into these contracts with Blue Cross, the hospitals had a "hand" in HAP's alleged injury.  These general allegations could support a finding that there exists a conflict between the representation of the hospitals and HAP.

As to whether the facts in the instant case support a finding that the conflict is directly adverse between HAP and the hospitals or whether Honigman's representation of HAP may be materially limited by Honigman's responsibilities to its hospital client's interests, the Honigman firm argues the facts as alleged in this case do not support such a conclusion.  In response to Blue Cross' Motion to Disqualify, HAP filed an Amended Complaint limiting the geographic market to Oakland County.

8

Honigman argues now that the Amended Complaint limits the relevant geographic market to Oakland County, because its hospital clients are not located in Oakland County there is no direct adverse conflict between HAP and the hospital clients.

The plaintiff bears the burden of defining "the relevant market within which the alleged anticompetitive effects" of the defendants' actions occur. *Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 916 (6th Cir. 2009). The relevant geographic market is "the area of effective competition." *Tampa Elec. Co. v. Nashville Coal Co.,* 365 U.S. 320, 327 (1961). This means "the market area in which the seller operates, and to which the purchaser can practicably turn for supplies." *Id.* Market definition is a highly fact-based inquiry which generally requires discovery. *Foundation For Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001). Courts have rejected overly narrow geographic markets that ignore the "commercial realities" facing buyers and sellers or that unduly limit the "relevant area of effective competition." *Nilavar v. Mercy Health Sys.,* 244 F. App'x 690, 698 (6th Cir. 2007). The Sixth Circuit has held that "when the evidence indicates that a large proportion of consumers within the proposed area in fact turn to alternative sources of supply outside the proposed area, the market boundaries posited by the plaintiff must be rejected." *Re/Max Int'l, Inc. v. Realty One, Inc.,* 173 F.3d 995, 1017 (6th Cir. 1999).

Because no discovery has been taken in this case, HAP's limitation of the relevant geographic market in this case cannot support its claim that no such direct adverse conflict exists since market definition is a highly fact-based inquiry. The issue of relevant geographic market was highly contested in the other cases. HAP's definition of the relevant geographic market in its Amended Complaint does not necessarily control in this case, because the definition is dependent on the facts revealed during discovery.

Based on the above analysis, Blue Cross has shown, and as admitted by the Honigman firm, that there exists a past (and perhaps current) attorney-client relationship between certain hospitals represented by Honigman which may be adverse to HAP's position in the instant case.

Applying the second prong of the *Dana* case, whether the subject matter of those relationships was/is substantially related, the answer is yes. The previous cases before this Court, including the instant case, involve allegations against Blue Cross that the MFNs injured certain insurers and/or consumers. Honigman's relationship with the hospitals involved those hospitals' contractual relationships with Blue Cross. Honigman's relationship with HAP is that Blue Cross' MFNs with certain hospitals injured HAP.

As to the third prong of the *Dana* case, whether the attorney acquired

confidential information from the party seeking disqualification or more specific to this case, whether Honigman acquired confidential information from its client hospitals in the previous cases, the answer to both parts of the test is also yes. Honigman obtained confidential information from Blue Cross in the other cases before this Court and also from its hospital clients during discovery in the other cases.

The Court is in a unique position in this instance since it presided over the other anti-trust cases involving MFN or MFN-Plus claims brought by various entities and individuals against Blue Cross.  It is well-aware of the exhaustive discovery involved in the other cases, which included the hospitals represented by the Honigman firm. The Court is mindful of the Sixth Circuit's caution that the judge, along with the parties, have joint responsibility to guard interests that are actually threatened. *Gordon,* 788 F.2d at 1199.   As noted in Michigan's rules of professional responsibility, opposing counsel may raise such a conflict issue, but that such an objection must be viewed with caution for it may be used as a technique of harassment.  The Court does not find that Blue Cross' instant motion was filed to harass HAP in light of the fact that there may be actual conflicts between the hospitals and HAP as noted above in this Court's application of the *Dana* test.  However, Michigan's rule allows the lawyer to seek consent from the clients involved if the lawyer "reasonably believes the representation will not adversely affect the

11

relationship with the other client." MRPC 1.7(a) and (b). At this time, the Court denies without prejudice Blue Cross' motion pending the Honigman firm seeking consent from all the clients involved.

Accordingly,

IT IS ORDERED that the Motion to Disqualify Counsel **(Doc. No. 14)** is DENIED without prejudice for the reasons set forth above pending the Honigman firm seeking consent from all the clients involved.

IT IS FURTHER ORDERED that the Motion to Stay **(Doc. No. 16)** was GRANTED on the record.

IT IS FURTHER ORDERED that Blue Cross file its Answer to the Amended Complaint within 21 days from the entry of this Order.

IT IS FURTHER ORDERED that a Scheduling Conference in this matter is set for **Monday, November 16, 2015, 2:00 p.m.**

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: September 29, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

12