# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| HEALTH ALLIANCE PLAN OF MICHIGAN, HAP PREFERRED, INCORPORATED, and ALLIANCE HEALTH AND LIFE INSURANCE COMPANY, | ) ) ) ) ) | Civil Action No. 2:14-cv-13788 |
| | ) | Judge: Hon. Denise Page Hood |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Magistrate Judge: Hon. Michael J. Hluchaniuk |
| | ) | |
| BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY, a Michigan nonprofit mutual insurance company, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS HEALTH ALLIANCE PLAN OF MICHIGAN'S AMENDED COMPLAINT

Robert A. Phillips (P58496)
BLUE CROSS BLUE SHIELD OF MICHIGAN
600 Lafayette East, MC 1925
Detroit, MI 48226
313-225-0536
rphillips@bcbsm.com

Thomas Van Dusen (P30602)
BODMAN PLC
201 West Big Beaver Road
Suite 500
Troy, MI 48084
248-743-6076

Todd M. Stenerson (P51953)
D. Bruce Hoffman
(Adm. E.D. MI, DC Bar 495385)
Neil K. Gilman
(Adm. E.D. MI, DC Bar 449226)
Jonathan H. Lasken
(Adm. E.D. MI, DC Bar 997251)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Ave., NW
Washington, DC 20037
202-955-1500
tstenerson@hunton.com

Defendant Blue Cross Blue Shield of Michigan ("BCBSM"), by its undersigned counsel of record, submits this Motion to Dismiss, with prejudice, all claims alleged against it as set forth in the Complaint.  Specifically, BCBSM seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

In support of this motion, BCBSM relies upon the authorities and arguments set forth in the incorporated brief, as well as its attachments.

As required by Local Rule, 7.1(a)(2)(A), BCBSM's counsel held a conference with counsel for Health Alliance Plan of Michigan ("HAP") in which BCBSM explained the nature of the motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

Dated:  October 20, 2015

Respectfully submitted,

/s/ Todd M. Stenerson
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
202-955-1500
tstenerson@hunton.com
P51953

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| HEALTH ALLIANCE PLAN OF MICHIGAN, HAP PREFERRED, INCORPORATED, and ALLIANCE HEALTH AND LIFE INSURANCE COMPANY, | ) ) ) ) ) | Civil Action No. 2:14-cv-13788 |
| | ) | Judge:  Hon. Denise Page Hood |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Magistrate Judge:  Hon. Michael J. Hluchaniuk |
| | ) | |
| BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY, a Michigan nonprofit mutual insurance company, | ) ) ) ) ) | |
| Defendant. | ) ) | |

---

## DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS HEALTH ALLIANCE PLAN OF MICHIGAN'S COMPLAINT

Robert A. Phillips (P58496)
BLUE CROSS BLUE SHIELD OF MICHIGAN
600 Lafayette East, MC 1925
Detroit, MI  48226
313-225-0536
rphillips@bcbsm.com

Thomas Van Dusen (P30602)
BODMAN PLC
201 West Big Beaver Road
Suite 500
Troy, MI  48084
248-743-6076

Todd M. Stenerson (P51953)
D. Bruce Hoffman
(Adm. E.D. MI, DC Bar 495385)
Neil K. Gilman
(Adm. E.D. MI, DC Bar 449226)
Jonathan H. Lasken
(Adm. E.D. MI, DC Bar 997251)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Ave., NW
Washington, DC  20037
202-955-1500
tstenerson@hunton.com

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED............................................................. ii

CONTROLLING OR APPROPRIATE AUTHORITY FOR RELIEF
SOUGHT.......................................................................................................... viii

INTRODUCTION ...............................................................................................1

ARGUMENT .......................................................................................................2

I.    HAP's Monopolization, Tortious Interference, and Lost Profits Claims
      Are Time Barred. ......................................................................................2

      A.    HAP's monopolization claims (Counts III and IV) are time barred.....5

      B.    HAP's tortious interference claim (Count V) is time barred. ..............6

      C.    HAP's claims for lost profits in the sale of commercial health
            insurance are time barred. ...................................................................7

II.   HAP Fails to Allege Facts Plausibly Supporting Its Proposed
      Geographic Market for Commercial Health Insurance. ..................................9

      A.    Courts routinely dismiss antitrust complaints when Plaintiffs
            allege implausibly narrow geographic markets.................................10

      B.    HAP fails to allege any facts supporting its implausibly narrow
            geographic market. ...........................................................................12

            1.    HAP's allegations require a much broader market...................12

            2.    HAP's sole supporting allegation—that customers prefer
                  local provider networks—is insufficient as a matter of law.....14

III.  HAP's Unlawful Agreement (Counts I and II) and Monopolization
      Claims (Counts III and IV) Fail Under the Supreme Court's
      *Weyerhaeuser* and the Sixth Circuit's *Superior* Decisions. ..........................17

IV.   HAP Fails to Allege a Plausible Tortious Interference Claim (Count V).....21

CONCLUSION ....................................................................................................25

## STATEMENT OF ISSUES PRESENTED

1. Should the Court dismiss HAP's claims for monopolization, tortious interference, and lost profits (Counts I-V) as untimely?

   BCBSM's Answer: Yes.

2. Should the Court dismiss HAP's antitrust claims (Counts I-IV) for failure to plead a plausible geographic market?

   BCBSM's Answer: Yes.

3. Should the Court dismiss HAP's antitrust claims (Counts I-IV) for failing to plead the necessary elements required by the Supreme Court's *Weyerhaeuser* decision?

   BCBSM's Answer: Yes.

4. Should the Court dismiss HAP's tortious interference claim (Count V) for failure to plead a plausible claim?

   BCBSM's Answer: Yes.

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Abner v. Saginaw Cnty.*,
   496 F. Supp. 2d 810 (E.D. Mich. 2007) ..........................................................4, 5

*AIRFX.com v. AirFX LLC*,
   No. CV 11-01064-PHX-FJM, 2011 WL 6846428 (D. Ariz. Dec. 29,
   2011) ...................................................................................................................21

*Alabama v. Blue Bird Co.*,
   573 F.2d 309 (5th Cir. 1978) ................................................................................8

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974).........................................................................................3, 5

*Apani Sw., Inc. v. Coca-Cola Enters.*,
   300 F.3d 620 (5th Cir. 2002) ..............................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................2

*Ball Mem'l Hosp., Inc. v. Mutual Hosp. Ins.*,
   784 F.2d 1325 (7th Cir. 1986) ............................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................2

*Bell Atlantic Corp. v. AT&T Corp.*,
   339 F.3d 294 (5th Cir. 2003) ................................................................................8

*Blazer Foods, Inc. v. Rest. Props. Inc.*,
   673 N.W.2d 805 (Mich. Ct. App. 2003)...........................................................2, 3

*Bogosian v. Gulf Oil Corp.*,
   561 F.2d 434 (3d Cir. 1977) .................................................................................8

*BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*,
   552 N.W.2d 919 (Mich. Ct. App. 1996).............................................................24

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) ...................................................................8

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962).................................................................................11

*CBC Cos. v. Equifax, Inc.*,
   561 F.3d 569 (6th Cir. 2009) ...................................................................2

*Cedroni Assocs. v. Tomblinson Harburn Assocs., Architects & Planners,
   Inc.*, 821 N.W.2d 1 (Mich. 2012) ...................................................6, 21, 24

*Conwood Co., L.P. v. U.S. Tobacco Co.*,
   290 F.3d 768 (6th Cir. 2002) ...................................................................9

*Cowles v. Bank West*,
   719 N.W.2d 94 (Mich. 2006)................................................................4, 7

*Crown, Cork & Seal Co. v. Parker*,
   462 U.S. 345 (1983)...........................................................................3, 4, 8

*Dalley v. Dykema Gossett*,
   788 N.W.2d 679 (Mich. Ct. App. 2010)...........................................7, 21, 24

*Double D Spotting Serv., Inc. v. Supervalu, Inc.*,
   136 F.3d 554 (8th Cir. 1998) ...................................................................10

*Eidson v. Tenn. Dep't of Children's Servs.*,
   510 F.3d 631 (6th Cir. 2007) ...................................................................2

*Energy Conversion Devices Liquidation Trust ex rel. Madden v. Trina Solar
   Ltd.*, 2014 WL 5511517 (E.D. Mich. Oct. 31, 2014), *appeal docketed*,
   No. 15-2130 (6th Cir. Sept. 22, 2015) ...................................................19

*Erie Cnty., Ohio v. Morton Salt, Inc.*,
   702 F.3d 860 (6th Cir. 2012) ...................................................................2

*Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*,
   189 F. Supp. 2d 385 (E.D. Va. 2002) ......................................................21

*Ferguson Medical Group, L.P. v. Missouri Delta Medical Center*...................11, 12

*Formall, Inc. v. Cmty. Nat'l Bank of Pontiac*,
  421 N.W.2d 289 (1988) ...........................................................................24

*Gallardo v. AT&T Mobility, LLC*,
  937 F. Supp. 2d 1128 (N.D. Cal. 2013)..................................................4

*Grain v. Trinity Health*,
  No. 03-72486, 2008 WL 3833276 (E.D. Mich. Aug. 13, 2008) ........................2

*Grand Rapids Plastics, Inc. v. Lakian*,
  188 F.3d 401 (6th Cir. 1999) ...............................................................23

*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. 297 (E.D. Mich. 2001) ........................................................8

*Joba Const. Co., Inc. v. Burns & Roe*,
  329 N.W.2d 760 (Mich. Ct. App. 1982).................................................21

*Lansdowne on the Potomac Homeowners Ass'n v. OpenBand at Lansdowne
  LLC*, No. 1:11-cv-872, 2011 U.S. Dist. LEXIS 134477 (E.D. Va. Nov.
  22, 2011) ..........................................................................................10

*Lee v. Dell Prods., L.P.*,
  236 F.R.D. 358 (M.D. Tenn. 2006) ...................................................4, 5

*Little Caesar Enters. v. Smith*,
  895 F. Supp. 884 (E.D. Mich. 1995) ......................................................3

*Little Rock Cardiology Clinic PA v. Baptist Health*,
  591 F.3d 591 (8th Cir. 2009) ..................................................13, 15, 16

*Lucy v. Amoco Oil*,
  582 F. Supp. 1168 (E.D. Mich. 1984) ....................................................3

*Masco Contractor Servs. E., Inc. v. Beals*,
  279 F. Supp. 2d 699 (E.D. Va. 2003) ...................................................23

*Mich. Div. – Monument Builders of N. Am. v. Mich. Cemetery Ass'n*,
  524 F.3d 726 (6th Cir. 2008) ...............................................................10

*Mich. Podiatric Med. Ass'n v. Nat'l Foot Care Program, Inc.*,
  438 N.W.2d 349 (Mich. Ct. App. 1989)................................................24

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) ................................................................2

*Nilavar v. Mercy Health Sys.*,
   244 F. App'x 690 (6th Cir. 2007) .......................................................11

*Re/Max Int'l., Inc. v. Realty One, Inc.*,
   173 F.3d 995 (6th Cir. 1999) .......................................................12, 14

*Rockwell Med., Inc. v. Yocum*,
   76 F. Supp. 3d 636 (E.D. Mich. 2014) .......................................22, 23

*Schipani v. Ford Motor Co.*,
   302 N.W.2d 307 (Mich. Ct. App. 1981)...........................................21

*Smugglers Notch Homeowners' Ass'n v. Smugglers' Notch Mgmt. Co.*,
   No. 1:08-CV-186, 2009 U.S. Dist. LEXIS 46026 (D. Vt. May 29, 2009).........10

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.*,
   784 F.3d 311 (6th Cir. 2015) .............................................................19

*Tampa Elec. Co. v. Nashville Coal Co.*,
   365 U.S. 320 (1961)...................................................................12, 13

*The Shane Group v. Blue Cross Blue Shield of Michigan*,
   No. 2:10-cv-14360 (E.D. Mich.) ................................................passim

*Total Ben. Servs., Inc. v. Group Ins. Admin., Inc.*,
   875 F. Supp. 1228 (E.D. La. 1995)...................................................16

*United States v. Grinnell*,
   384 U.S. 563 (1966)...................................................................14, 15

*Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*,
   623 F.3d 281 (6th Cir. 2010) .............................................................24

*Weston v. AmeriBank*,
   265 F.3d 366 (6th Cir. 2001) ...............................................................4

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
   549 U.S. 312 (2007)..................................................................passim

*Worldwide Basketball & Sport Tours, Inc. v. NCAA,*
   388 F.3d 955 (6th Cir. 2004) ...................................................................9

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.,*
   413 F.3d 553 (6th Cir. 2007) ...................................................................4

*Z Techs. Corp. v. Lubrizol Corp.,*
   No. 12-12206, 2013 WL 440109 (E.D. Mich. Feb. 5, 2013) ............................3

*Zenith Radio Corp. v. Hazeltine Res., Inc.,*
   401 U.S. 321 (1971)...............................................................................3

STATUTES

15 U.S.C. § 15b ..........................................................................................2

MICH. ANTITRUST REFORM ACT § 445.781(2) .................................................2

Sherman Act Section 2, 15 U.S.C. § 2........................................................9, 18, 19

Sherman Act Section 1, 15 U.S.C. § 1........................................................9, 18, 19

OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (10th ed. 2014) ..................................................7

## <u>CONTROLLING OR APPROPRIATE AUTHORITY FOR RELIEF SOUGHT</u>

### FEDERAL CASES

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974)

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311 (6th Cir. 2015)

*Tampa Elec. Co. v. Nashville Co.*, 365 U.S. 320 (1961)

*United States v. Grinnell*, 384 U.S. 563 (1966)

*Weston v. AmeriBank*, 265 F.3d 366 (6th Cir. 2001)

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312 (2007)

### STATE CASES

*Cedroni Assocs. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 802 N.W.2d 682 (Mich. Ct. App. 2010)

*Cowles v. Bank West*, 719 N.W.2d 94 (Mich. 2006)

*Dalley v. Dykema Gossett*, 788 NW. 2d 679 (Mich. Ct. App. 2010)

## **INTRODUCTION**

HAP opted out of the *Shane*[1] class settlement to file this complaint. But HAP's Complaint raises claims that were not and could not have been litigated in *Shane*. HAP's Complaint should be dismissed because:

- HAP's claims for monopolization, tortious interference, and lost profits (Counts I-V) are time barred.

- HAP's antitrust claims (Counts I-IV) fail because:

    - HAP pleads an implausible geographic market, consisting of a single county plucked out of the middle of metropolitan Detroit, and

    - HAP fails to allege the two elements required under the Supreme Court's *Weyerhaeuser* decision, providing another independent ground for dismissing HAP's antitrust claims.

- HAP cannot sustain its tortious interference claim (Count V) because it does not identify specific business relationships—either actual or on the brink of formation—that were intentionally targeted and disrupted by BCBSM's challenged conduct.

---

[1] *The Shane Group v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14360 (E.D. Mich.).

1

## **ARGUMENT**

To survive a motion to dismiss, an antitrust plaintiff such as HAP must allege sufficient facts to support each element of its claims including, for antitrust claims, the alleged anticompetitive effects and injury.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 460-61 (6th Cir. 2007); *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  As a result, "federal courts have been 'reasonably aggressive' in weeding out meritless antitrust claims at the pleading stage," and the Sixth Circuit is no exception.  *NicSand*, 507 at 450 (6th Cir. 2007) (citations omitted); *see, e.g.*, *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860 (6th Cir. 2012); *CBC Cos. v. Equifax, Inc.*, 561 F.3d 569, 572-73 (6th Cir. 2009).  HAP's claims are meritless and should be dismissed.

## I.    **HAP's Monopolization, Tortious Interference, and Lost Profits Claims Are Time Barred.**

HAP's claims for monopolization, tortious interference, and lost profits are facially time barred under the four-year statute of limitations for antitrust claims[2] and the three-year statute of limitations for tortious interference claims.[3]   The statute of limitations began running on HAP's antitrust claims when HAP was

---

[2] 15 U.S.C. § 15b; MICH. ANTITRUST REFORM ACT § 445.781(2).
[3] *Grain v. Trinity Health*, No. 03-72486, 2008 WL 3833276, at *4 (E.D. Mich. Aug. 13, 2008); *Blazer Foods, Inc. v. Rest. Props. Inc.*, 673 N.W.2d 805, 813 (Mich. Ct. App. 2003).

allegedly injured.  *See Zenith Radio Corp. v. Hazeltine Res., Inc.*, 401 U.S. 321, 338 (1971) ("a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business").[4]  Similarly, the statute began running on HAP's tortious interference claim when BCBSM's alleged conduct injured HAP.  *See Blazer Foods*, 673 N.W.2d at 813 ("[l]imitations periods in tort actions begin to run at the time all elements, including damages, can be alleged in a proper complaint"); *see also Lucy v. Amoco Oil*, 582 F. Supp. 1168, 1173 (E.D. Mich. 1984).

HAP's alleged injuries must have occurred prior to 2008 because it alleges damages "since at least 2008" for all of its claims.  Am. Compl. ¶ 66, Dkt. 24 ("Am. Compl.").  HAP filed its Complaint in October 2014—over six and one-half years after its alleged injuries.  HAP's claims are therefore time barred unless the *Shane* class action tolled the statute on those claims under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983).  But tolling under those cases does not save the majority of HAP's claims.[5]  The filing of a class action tolls only claims that closely mirror those raised in the class complaint.  *See Weston v. AmeriBank*, 265

---

[4] Michigan's antitrust law follows federal precedent.  *Z Techs. Corp. v. Lubrizol Corp.*, No. 12-12206, 2013 WL 440109, at *6 (E.D. Mich. Feb. 5, 2013) (*quoting Little Caesar Enters. v. Smith*, 895 F. Supp. 884, 898 (E.D. Mich. 1995).
[5] BCBSM does not challenge here that HAP's claim for hospital overcharges under Counts I and II was tolled by *Shane*.

F.3d 366, 368 (6th Cir. 2001); *Cowles v. Bank West*, 719 N.W.2d 94, 101-10 (Mich. 2006).[6]  Under these stringent tests imposed by federal and state law, all of HAP's claims, except its request for damages from alleged hospital overcharges in Counts I and II, are time barred.

In determining whether the claims pursued by the *Shane* plaintiffs tolled HAP's claims, federal law applies to HAP's federal claims, and state law applies to HAP's state claims.[7]  In the Sixth Circuit, federal claims are tolled "only for substantive claims that were raised, or could have been raised, in the [class action] complaint."  *Weston*, 265 F.3d at 368.  For state law claims, only those claims that "arose out of the same factual and legal nexus" and have notified the defendant "of the class member's claim and the number and generic identities of the potential plaintiffs" will toll the statute of limitations.  *See Cowles*, 719 N.W.2d at 96-97, 105.  Tolling, even if originally applicable, ceases when the class claims are dropped or abandoned.  *See Lee v. Dell Prods., L.P.*, 236 F.R.D. 358, 362 (M.D. Tenn. 2006); *see also Abner v. Saginaw Cnty.*, 496 F. Supp. 2d 810, 822 (E.D. Mich. 2007).  The majority of HAP's claims cannot meet these tolling standards.

---

[6] *See Crown, Cork*, 462 U.S. at 354 (Powell, J. concurring) ("The [*American Pipe* tolling] rule should not be read . . . as leaving a plaintiff free to raise different or peripheral claims following denial of class status.").

[7] *See Gallardo v. AT&T Mobility, LLC*, 937 F. Supp. 2d 1128, 1138-39 (N.D. Cal. 2013); *see also Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 567 (6th Cir. 2007).

A.   **HAP's monopolization claims (Counts III and IV) are time barred.**

HAP's monopolization claims fall beyond the applicable four-year statute of limitations.  Although the class plaintiffs in *Shane* asserted a monopolization claim when they filed their complaint on October 29, 2010, the class plaintiffs abandoned that claim when they filed their amended complaint on June 12, 2012.[8]  That ended any tolling.  *See Lee*, 236 F.R.D. at 362; *see also Abner*, 496 F. Supp. 2d at 822.  Once the class plaintiffs dropped those claims, HAP could not simply stand by and "sle[ep] on [its] rights."  *See American Pipe*, 414 at U.S. 554-55.  Rather, the statute began to run again on HAP's monopolization claims.

HAP seeks damages for alleged monopolization dating from 2008 (and thus alleges its injury accrued in 2008) and filed this action in October 2014.  Am. Compl. ¶ 66.  From January 1, 2008 until October 29, 2010—the date the *Shane* plaintiffs filed their complaint—34 months passed.  The *Shane* plaintiffs abandoned their monopolization claims and any purported tolling ended on June 12, 2012.  But HAP did not file this action until October 1, 2014, waiting more than 27 months after the *Shane* plaintiffs abandoned them.  The time between 2008 and the date the HAP Complaint was filed during which the statute of limitations

---

[8] *Compare* Class Action Compl. (Dkt. 1), *Shane Group*, No. 2:10-cv-14360-DPH-MKM (E.D. Mich. Oct. 29, 2010) *with* Consol. Am. Compl. (Dkt. 72), *Shane Group*, No. 2:10-cv-14360-DPH-MKM (E.D. Mich. June 12, 2012).

was not tolled was more than five years (61 months).  Thus, the four-year statute of limitations on HAP's monopolization claims had expired.

### B.    HAP's tortious interference claim (Count V) is time barred.

HAP's tortious interference claim is similarly time barred under Michigan's three-year statute of limitations.  As with HAP's antitrust claims, HAP alleges generalized harm "since at least 2008," leaving no doubt that HAP's tortious interference claim accrued at that time.  Am. Compl. ¶ 66.  HAP, recognizing that the statute of limitations has run on its tortious interference claim, tries to argue that *Shane* also tolled this claim.  *Id.*  But this argument fails.

First, the *Shane* plaintiffs did not raise, and could not have raised, a tortious interference claim because the Named Plaintiffs and the overwhelming majority of class members did not compete with BCBSM and could not plausibly allege harm to a business relationship.[9]

Second, HAP's tortious interference and antitrust claims do not "arise out of the same factual and legal nexus."  The conduct HAP must plead to support a tortious interference claim fundamentally differs from the conduct underlying its antitrust claims.  To plead a plausible tortious interference claim, HAP must identify a specific business relationship or expectancy and allege an intentional

---

[9] *See Cedroni Assocs. v. Tomblinson Harburn Assocs., Architects & Planners, Inc.*, 821 N.W.2d 1 (Mich. 2012) (reinstating order granting defendant's motion for summary disposition because plaintiff did not have a valid business relationship or expectancy to sustain its tortious interference claim).

interference with that relationship.[10]  HAP's antitrust claims, however, require proof of harm to competition broadly in a relevant market—not interference with a specific contract HAP was about to sign (which would not be sufficient to support an antitrust claim).  Those claims thus do not "ar[i]se out of the same factual and legal nexus." *See Cowles*, 719 N.W.2d at 96-97, 105.  Because more than six years passed from HAP's alleged injury until the filing of its Complaint, HAP's tortious interference claim is time barred.

### C.   HAP's claims for lost profits in the sale of commercial health insurance are time barred.

Finally, none of HAP's antitrust claims for lost profits in the sale of commercial health insurance were tolled by *Shane* and thus are time barred.[11]

The *Shane* plaintiffs did not raise a claim for lost profits.  Instead, the *Shane* plaintiffs made clear they were pursuing *only* claims for alleged overcharges by hospitals.  Consolidated Amended Complaint at ¶ 1, *The Shane Group, Inc. v. Blue Cross Blue Shield of Michigan* (E.D. Mich. June 22, 2012), Dkt. 78 ("This class action seeks to recover overcharges paid by purchasers of Hospital Healthcare

---

[10] *Dalley v. Dykema Gossett*, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010). (discussed *infra* Sec. IV).

[11] HAP's claim for lost profits amounts to a "claim" and the same *American Pipe* tolling analysis applies to HAP's lost profits claim as to its other claims (e.g., monopolization).  A "claim" is a "demand for money, property, or a legal remedy to which one asserts a right . . . Also termed *claim for relief*." BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis in original).  Thus, a claim encompasses both the substantive legal charge and the relief sought. *See id.*

Services . . . directly to hospitals in Michigan that resulted from [BCBSM's] anticompetitive acts . . ."). Moreover, the *Shane* plaintiffs could not have raised a lost profits claim. The Named Plaintiffs and the overwhelming majority of class members (more than 99%) were not competitors of BCBSM and would not have had standing to seek lost profits.[12] What is more, claims for lost profits are generally not susceptible to class treatment.[13]

HAP's lost profits claims will also require substantially different proof, including (among other things), a "focus on the operation of [HAP's] business," which was not raised in *Shane*. *See Alabama v. Blue Bird Co.*, 573 F.2d 309, n.31 (5th Cir. 1978); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3d Cir. 1977). Because HAP will rely on different "evidence and witnesses" to support its lost profits claims, it cannot show that its lost profits claims arose out of the "same factual and legal nexus" as the claim for hospital overcharges sought in *Shane*. *See Crown, Cork*, 462 U.S. at 353.

---

[12] *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 310 (E.D. Mich. 2001) (finding plaintiffs' arguments for a lost profit measure of damages unpersuasive when plaintiffs were purchasers of defendant's products, not its competitors).

[13] *See, e.g.*, *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (claims for lost profits are "inherently individualized and thus not easily amenable to class treatment"); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003) ("Given the need for such individualized damages inquiries, we conclude that individual issues concerning damages predominate over questions common to the proposed class.").

8

HAP's federal lost profits claims were not and could not have been brought in *Shane* and are therefore time barred under federal law.  HAP's state lost profit claims do not arise out of the "same factual and legal nexus" as the hospital overcharge claims in *Shane* and are therefore time barred under state law.  HAP's lost profits claims must therefore be dismissed because they were brought long after the statute of limitations expired.

## II.  HAP Fails to Allege Facts Plausibly Supporting Its Proposed Geographic Market for Commercial Health Insurance.

HAP alleges a geographic market for the sale of commercial health insurance limited to Oakland County.   Am. Compl. ¶¶ 30-33.[14]   BCBSM recognizes that this Court previously denied its motions to dismiss other MFN plaintiffs' antitrust claims for failure to allege plausible geographic markets.  But those cases are not analogous.  In the other MFN complaints, the plaintiffs alleged

---

[14]  HAP acknowledges that it must define a relevant geographic market for its Sherman Act Section 1, 15 U.S.C. § 1, (combination, contract, or conspiracy) claim and its Section 2, 15 U.S.C. § 2, (monopolization) claim, as well as for its identical state law antitrust claims.  Am. Compl. ¶¶ 29-33.  *See, e.g.*, *Worldwide Basketball & Sport Tours, Inc. v. NCAA*, 388 F.3d 955, 959 (6th Cir. 2004); *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002). Although HAP also vaguely alleges a hospital services market, it has made no allegations of harm in any such market, and so we do not address it here.

much larger geographic markets—ranging from Metropolitan Statistical Areas, such as the Detroit metropolitan area, to the entire state of Michigan.[15]

While BCBSM believed those prior pleadings were insufficient, the other complaints never alleged a market as facially implausible as a single county located smack in the middle of metropolitan Detroit, a highly urbanized and contiguous area comprised of at least three, if not five, counties. Although "'courts hesitate to grant motions to dismiss for failure to plead a relevant market," courts do routinely dismiss complaints that "defin[e] a geographic market in an unreasonably and implausibly narrow manner."[16] HAP's antitrust claims (Counts I through IV) thus must be dismissed.

### A. Courts routinely dismiss antitrust complaints when Plaintiffs allege implausibly narrow geographic markets.

As this Court noted in its order requiring HAP's counsel to obtain consents from all of its clients, "[c]ourts have rejected overly narrow geographic markets that ignore the 'commercial realities' facing buyers and sellers or that unduly limit

---

[15] *Shane* Consol. Am. Compl. ¶¶ 49-59; Complaint at ¶¶ 33-38, *Aetna, Inc. v. Blue Cross Blue Shield of Michigan*, No. 2:11-CV-15346-DPH-MKM (E.D. Mich. Dec. 6, 2011), Dkt. 1.

[16] *Lansdowne on the Potomac Homeowners Ass'n v. OpenBand at Lansdowne LLC*, No. 1:11-cv-872, 2011 U.S. Dist. LEXIS 134477, at *14-15 (E.D. Va. Nov. 22, 2011) (citations omitted); *see, e.g., Mich. Div. – Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726 (6th Cir. 2008); *Apani Sw., Inc. v. Coca-Cola Enters.*, 300 F.3d 620, 633 (5th Cir. 2002); *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998); *Smugglers Notch Homeowners' Ass'n v. Smugglers' Notch Mgmt. Co.*, No. 1:08-CV-186, 2009 U.S. Dist. LEXIS 46026, at *8-9 (D. Vt. May 29, 2009).

10

the 'relevant area of effective competition.'"[17]  In *Ferguson Medical Group, L.P. v. Missouri Delta Medical Center*,[18] the court dismissed a plaintiff's antitrust claims because the plaintiff alleged an implausibly narrow geographic market similar to HAP's alleged geographic market here.  The *Ferguson* plaintiffs alleged that the relevant geographic market for the hospital services at issue was comprised of portions of several Missouri counties and areas in Illinois and Kentucky.  2006 U.S. Dist. LEXIS 53493 at *8.  The defendants countered that the "proposed market [was] nothing more than an exercise in gerrymandering designed to artificially inflate [defendant's] market power by excluding nearby competitors" in the cities of Poplar Bluff and Cape Girardeau that also had acute care hospitals providing the services at issue.  *Id.*

In finding the proposed market "too narrow as a matter of law," the *Ferguson* court emphasized that "it [was] apparent from simply looking at a map that [plaintiff's] proposed market was artfully pled to exclude competitors in Cape Girardeau and Poplar Bluff."  *Id.* at *8-9.  Plaintiffs thus ignored "the geographic reality of the region at issue" because "some residents of [plaintiff's] proposed geographic market could practicably turn to" the other cities for these services.  *Id.*

---

[17] Order Denying Without Prejudice Blue Cross' Mtn. to Disqualify, Granting Blue Cross' Mtn. to Stay and Setting Dates 9, Sept. 29, 2015, Dkt. 41 ("DQ Order") (citing *Nilavar v. Mercy Health Sys.*, 244 F. App'x 690, 698 (6th Cir. 2007)).  *See Brown Shoe Co. v. United States*, 370 U.S. 294, 328 (1962).
[18] No. 1:06CV8, 2006 U.S. Dist. LEXIS 53493 (E.D. Mo. Aug. 2, 2006).

11

at \*14.  According to the court, "[t]his arrangement makes sense only if one were attempting to artificially boost [the medical center's] market power.  The law, however, does not permit such gerrymandering."  *Id.* at \*10.

HAP's "exercise in gerrymandering" is no different than the methodology found unreasonable in *Ferguson*.  By "simply looking at a map," it becomes apparent that HAP's "proposed market was artfully pled to exclude competitors" in the surrounding Detroit metropolitan area and thus ignores "the geographic reality of the region."  HAP's market is implausibly small and requires dismissal.

### B.  HAP fails to allege any facts supporting its implausibly narrow geographic market.

Not only is HAP's proposed market facially implausible but it is also not supported by the allegations in HAP's Complaint.  First, the relevant facts HAP alleges require a much larger geographic market.  Second, the only fact HAP cites for its tiny proposed market is legally insufficient.

### 1.  *HAP's allegations require a much broader market.*

The Supreme Court has long made clear that geographic markets are defined by "the market area in which the seller operates, and to which the purchaser can practicably turn for supplies."  *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961); *see Re/Max Int'l., Inc. v. Realty One, Inc.*, 173 F.3d 995, 1016-17 (6th Cir. 1999).  The product at issue here is commercial health insurance or "health care financing;" the conduct at issue is MFNs between BCBSM and

hospitals; and the sellers are BCBSM, HAP, and other insurers. Am. Compl. ¶¶ 22, 38. The purchasers of health insurance in Oakland County range from large, national customers to individual insureds.

HAP's Complaint lacks allegations connecting the sellers, products, and competition to Oakland County. HAP fails to identify a single hospital in Oakland County that had a MFN with BCBSM. Nor does HAP plead any specific facts that MFNs affected its contracts and prices with any Oakland County hospital. HAP also does not (and cannot) allege that it competes only in Oakland County. Instead, HAP alleges that MFNs harmed competition *throughout Michigan* and that BCBSM operates in an area well beyond Oakland County. *See* Am. Compl. ¶¶ 3, 11, 34, 38-39, 43, 50, 55-56; *see also Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 598-99 (8th Cir. 2009) (finding plaintiff did not allege a plausible geographic market when alleged that defendant "operate[d] and compete[d] in an area well beyond the city of Little Rock" but confined the market to Little Rock).

As this Court has recognized, "the relevant geographic market is 'the area of effective competition.'" DQ Order at 9 (*quoting Tampa Electric*, 365 U.S. at 327). And, as this Court also noted, "when the evidence indicates that a large proportion of consumers within the proposed area in fact turn to alternative sources of supply outside the proposed area, the market boundaries posited by the plaintiff must be

13

rejected." *Id.* (*quoting Re/Max Int'l, Inc.* 173 F.3d at 1017). HAP's own allegations supply that "evidence" and require that its market be rejected on the pleadings alone.

>    2.    *HAP's sole supporting allegation—that customers prefer local provider networks—is insufficient as a matter of law.*

HAP's sole support for its proposed geographic market is based on the unremarkable allegation that consumers want their health insurance plans to include hospitals where the consumers "live and work." Am. Compl. ¶ 29. Under HAP's theory, Oakland County is the relevant geographic market simply because insurers selling to customers in Oakland County allegedly must contract with Oakland County hospitals. Compl. ¶¶ 29-33.[19] But HAP's allegations improperly focus on only part of one feature of selling a health insurance product—HAP's local provider network in Oakland County. The Supreme Court and other courts have long made clear, however, that geographic markets cannot be defined by such local product features. *See United States v. Grinnell*, 384 U.S. 563 (1966). As a result, HAP's geographic market fails because HAP completely disregards the Supreme Court's instruction to look to the *location of sellers*.

In *United States v. Grinnell*, the Supreme Court rejected a proposed narrow geographic market where the sellers were national but used local service facilities

---

[19] HAP is apparently trying to rely on the Government's roughly similar allegations. But the Government did not attempt to define a market as absurdly narrow as the one HAP proposes.

to compete in local geographic areas. The *Grinnell* defendant offered fire and burglary alarm services—an inherently local service. To compete, sellers (including defendant) had to provide local stations to cover narrow areas within a 25 mile radius of each station. 384 U.S. at 587-89. Nevertheless, the Supreme Court determined that the relevant geographic market was nationwide, despite the need and service being "intensely local." *Id.* at 587. The Court held that the proper test considered the defendant's location and its competition in multiple geographies with other diversely-located competitors, not the location of the facilities used by customers in any particular place. *Id.* at 587-88.

HAP's Complaint falls squarely into the trap prohibited by *Grinnell*. HAP's attempt to define the geographic market by *features* of commercial health insurance, such as a network of local providers, ignores the Supreme Court's instruction to look to the location of sellers and the scope of competition between sellers. Am. Compl. ¶¶ 29-33. For the same reasons, the Eighth Circuit rejected a similar attempt to carve an artificially narrow geographic market in *Little Rock Cardiology Clinic PA v. Baptist Health*. As the Eighth Circuit explained:

> [A]n antitrust plaintiff . . . cannot then limit the relevant geographic market to a location smaller than that area [the defendant competes in] based solely on the fact that consumers must travel to that smaller area to obtain the relevant service or product. To do so would allow

antitrust plaintiffs to gerrymander the relevant geographic markets into artificially narrow locations . . ."[20]

Just as in *Little Rock*, HAP cannot limit the relevant geographic market to Oakland County—an area smaller than the area BCBSM competes in—based solely on the allegation that consumers in Oakland County prefer hospitals in Oakland County.

BCBSM is not aware of any court decision where the geographic market for commercial health insurance was limited to a single county. Consistent with the Supreme Court's holding in *Grinnell*, courts have repeatedly found that such markets are much broader. *See, e.g., Ball Mem'l Hosp., Inc. v. Mutual Hosp. Ins.*, 784 F.2d 1325, 1336 (7th Cir. 1986) (defining relevant geographic market for health care financing as "'regional, if not national'"); *Total Ben. Servs., Inc. v. Group Ins. Admin., Inc.*, 875 F. Supp. 1228, 1236-37 (E.D. La. 1995) (finding "no credible evidence to support limiting the geographic market [for health care financing] to New Orleans" when evidence showed that "customers looked to suppliers from all over the country").

Indeed, courts reject allegations like HAP's because without focusing on the extent of competition, the allegations provide no guidance or limiting principles for market definition. HAP's "live and work" reasoning would hold true for any county, or indeed any city, town, or neighborhood. For example, consumers in Wayne County, or Southfield, or any other location would presumably prefer

---

[20] 591 F.3d at 600-01.

insurers with hospitals and other provider contracts in Wayne County, or Southfield, or whatever other location or locations the particular consumers happened to live or work. But that does not make Wayne County, or Southfield, or any other particular county, town, or neighborhood an appropriate geographic market for an antitrust claim. Further, HAP's argument would dictate that the geographic market would be different for every customer (each of whom would have different preferences for the location of their providers). Recognizing these flaws, the courts have dismissed absurd and impractical proposed markets, like HAP's, as a matter of law.

Without a plausible relevant market, all of HAP's antitrust claims (Counts I-IV) must be dismissed.

### III. HAP's Unlawful Agreement (Counts I and II) and Monopolization Claims (Counts III and IV) Fail Under the Supreme Court's *Weyerhaeuser* and the Sixth Circuit's *Superior* Decisions.

HAP's antitrust claims also must be dismissed because HAP fails to make specific allegations required by the Supreme Court in *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*[21]  HAP claims that BCBSM "inflat[ed] Blue Cross' rivals' costs and reduc[ed] their ability to compete against Blue Cross." Am. Compl. ¶¶ 50(a), 43. According to HAP, BCBSM did so by overpaying for a critical input (hospital services), which then increased the price of hospital services

---

[21] 549 U.S. 312 (2007).

for everyone and allowed BCBSM to undercut HAP in pricing commercial health insurance. *See* Am. Compl. ¶¶ 40, 48, 50. BCBSM's lower-priced sales allegedly harmed HAP in the commercial health insurance output market.

To prevail on its claim that BCBSM raised rivals' costs by overpaying for inputs and then undercut those rivals' prices, HAP must meet the two elements required by *Weyerhaeuser*: (1) BCBSM's purchase of hospital services led to below-cost pricing of the outputs (i.e. commercial insurance) and (2) BCBSM had "a dangerous probability of recouping the losses incurred" by overpaying for the inputs (i.e. hospital services). 549 U.S. at 325.[22] Although the Court previously found that other MFN plaintiffs did not need to meet *Weyerhaeuser*'s requirements, HAP's claims are different and the law has changed since the Court's earlier decisions.

First, the other MFN plaintiffs brought claims only under Section 1 of the Sherman Act, and they argued that *Weyerhaeuser* applied only to Section 2

---

[22] HAP alleges that BCBSM exercises market power on the buy side of the market and alleges a scheme analogous to predatory bidding. Am. Compl. ¶ 34 ("Blue Cross has during the relevant period, and does today possess . . . monopsony power in the purchase of hospital services . . ."). "In a predatory-bidding scheme, a purchaser of inputs 'bids up the market price of a critical input to such high levels that rival buyers cannot survive (or compete as vigorously) and, as a result, the predating buyer acquires (or maintains or increases its) monopsony power.'" *Weyerhaeuser*, 549 U.S. at 320.

monopolization claims.[23]   But unlike the other MFN plaintiffs, HAP asserts monopolization claims under Section 2 (and the analogous Michigan statute). *Weyerhaeuser* plainly applies to HAP's Section 2 claims.

Second, although the applicability of *Weyerhaeuser* to Section 1 claims may have been unsettled when the Court addressed BCBSM's motion to dismiss in the Government case, since then the Sixth Circuit held that the same Section 2 predation elements apply to Section 1 predation claims. *See Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320 (6th Cir. 2015).[24]   Thus, *Weyerhaeuser* covers all of HAP's antitrust claims.

HAP's claim is the same as the claim in *Weyerhaeuser*.   In *Weyerhaeuser*, a competing sawmill alleged that Weyerhaeuser, the owner of six sawmills, drove it

---

[23] *See* Department of Justice Memorandum in Opposition to Motion to Dismiss at 19, *United States v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14155-DPH-MKM (E.D. Mich. Jan. 20, 2011), Dkt. 16; Transcript of Motion to Dismiss Hearing at 101, *United States v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14155-DPH-MKM (E.D. Mich. April 19, 2011), Dkt. 54 ("This is a Section 1 case, which has to do with agreements that unreasonably restrain trade.  Recoupment, Your Honor, is a concept associated with unilateral behavior by a monopolist or a would-be monopolist engaged in predatory pricing or predatory bidding.  These are acts subject to challenge under Section 2 of the Sherman Act, as the cases cited by Blue Cross make clear.").

[24] *See Weyerhaeuser*, 549 U.S. at 314 (holding that test for claims of predatory pricing also applies to predatory bidding claims); *see also Energy Conversion Devices Liquidation Trust ex rel. Madden v. Trina Solar Ltd.*, 2014 WL 5511517, at *5 (E.D. Mich. Oct. 31, 2014) ("The logic for such a requirement applies with equal force to claims brought under § 1 or § 2."), *appeal docketed*, No. 15-2130 (6th Cir. Sept. 22, 2015).

out of business by bidding up the price of sawlogs (an input into the downstream products made at the mills).   549 U.S. at 314.   The plaintiff alleged that Weyerhaeuser's overpayments drove up the price of sawlogs, and allowed Weyerhauser to undercut the plaintiff's prices, all as part of Weyerhaeuser's plan to drive it out of business.   *Id.* at 316.   The Supreme Court concluded that the plaintiff had not proven the second element for recovery—recoupment.   According to the Court, "[a]bsent proof of likely recoupment, a strategy of predatory bidding makes no economic sense because it would involve short-term losses with no likelihood of offsetting long-term gains."   *Id.* at 325 (vacating jury verdict and remanding).

Like the plaintiff sawmill in *Weyerhaeuser*, HAP alleges that BCBSM agreed to pay the hospitals *more* on the condition that hospitals charge everyone more.   Am. Compl. ¶ 40.   The cost of inputs—hospital services—thus allegedly rose for everyone.   And, as in *Weyerhaeuser*, HAP alleges that BCBSM used the rising cost of inputs to undercut HAP's prices in the output market for commercial health insurance.   *See id.* ¶ ¶ 12, 51-52.   Yet HAP does not plead facts supporting either of the *Weyerhaeuser* elements.

First, HAP does not allege that BCBSM incurred short-term losses.   HAP actually alleges the opposite—it alleges that BCBSM's profits *increased* during the relevant period.   *Id.* ¶ 40.

20

Second, even if HAP could allege short-term losses, HAP must also plead and prove that BCBSM later recouped those losses and "reap[ed] supracompetitive profits in the future."  HAP's Complaint lacks any factual allegations that BCBSM recouped any alleged losses.  Because HAP fails to allege the necessary facts to meet the elements under *Weyerhaeuser* and support its core theory of liability, all of its antitrust claims must be dismissed.

## IV.   HAP Fails to Allege a Plausible Tortious Interference Claim (Count V).

HAP similarly fails to plead a plausible claim for tortious interference with a prospective business advantage.  As an initial matter, HAP fails to identify any specific business relationship with which BCBSM supposedly interfered.  *See Dalley*, 788 N.W.2d at 696.  As court after court has held, a plaintiff must identify the "specific relationship" that the defendant interfered with to state a tortious interference claim.[25]

---

[25]  *E.g.*, *AIRFX.com v. AirFX LLC,* No. CV 11-01064-PHX-FJM, 2011 WL 6846428, at *1 (D. Ariz. Dec. 29, 2011); *see, e.g.*, *Schipani v. Ford Motor Co.*, 302 N.W.2d 307 (Mich. Ct. App. 1981) ("Of importance is whether the plaintiff alleges interference with specific third parties or an identifiable prospective class of third persons"); *Cedroni*, 802 N.W.2d at 689-90; *Joba Const. Co., Inc. v. Burns & Roe*, 329 N.W.2d 760, 770 (Mich. Ct. App. 1982) ("'The tort of intentional interference with business requires, as a basis, that a business relationship be proved with some degree of specificity, at least to the point that future profit be a realistic expectation and not merely wishful thinking."); *accord Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 391 (E.D. Va. 2002) ("Because plaintiffs do not identify the specific business relationships with which defendant has interfered, plaintiffs' tortious interference claim fails.").

For example, in *Rockwell Med., Inc. v. Yocum*,[26] the plaintiffs brought a tortious interference claim among other claims for breach of contract, misappropriation of trade secrets, and defamation.   To support its tortious interference claim, plaintiffs generically alleged that the defendant's disclosure and publication of allegations related to wrongful termination interfered with its contracts "with suppliers, vendors, investors, bankers, doctors [and] patients . . ." 76 F. Supp. 3d at 649.   The court dismissed the plaintiff's tortious interference claim for failure to identify the actual relationship with which the defendant allegedly interfered.   *Id.* at 649.   In doing so, Judge Lawson emphasized that "the plaintiffs have failed to identify any 'supplier[], vendor[], investor[], banker[], doctor[] . . . or patient[]' involved in a *specific* contractual relationship with them that was disrupted."   *Id.* (emphasis added).

The similarities between HAP's pleadings and those found insufficient in *Rockwell* are striking.   HAP similarly pleads that it "had a reasonable business expectancy of obtaining continuing business from [hundreds of] employers," Am. Compl. ¶ 82, and that it "had a reasonable expectancy of obtaining business from hundreds of additional employers" and from unspecified "insurance agents who regularly quote HAP health insurance offers to their clients."   *Id.* ¶¶ 83-84.   HAP never identifies the specific actual or prospective customer or insurance agent

---

[26] 76 F. Supp. 3d 636 (E.D. Mich. 2014).

relationship with which BCBSM supposedly interfered. Thus, like the tortious interference claim in *Rockwell*, HAP's claim should be dismissed.

In fact, the requirement that HAP plead a specific relationship is what distinguishes a *tort* claim of tortious inference from an *antitrust* claim. As one court explained when it confronted a plaintiff—like HAP—who sought to blur the line between antitrust claims and tortious interference claims:

> The purpose of laws against tortious interference is not to protect consumers or the operation of the marketplace generally. Rather, these causes of action provide a legal remedy where a particular party's *specific, existing* contract or business expectancy or opportunity has been interfered with in a tortious manner. Thus, the first element that a party claiming under either of these torts must prove is the existence of some specific contract or relationship.[27]

If a party could plead tortious interference simply by pleading that a defendant harmed competition resulting in a generic loss of business, then every antitrust claim would also be a claim for tortious interference. That is not the law.[28]

---

[27] *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003) (emphasis in original).

[28] BCBSM further notes that HAP cannot fix this problem by simply listing the customers on which it bid. As the Sixth Circuit has explained, having the opportunity to bid on a customer is not the same as having a valid prospective business relationship. *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 408 (6th Cir. 1999). Thus, it is not enough for HAP to plead a number of customers that it would have been "quote[d] . . . to," Am. Compl. ¶ 84, HAP must plead a relationship that it was "not only 'about to' [enter into,] but would, but for the malicious interference of defendants, have entered into," *Grand Rapids Plastics*, 188 F.3d at 408 (internal citations omitted).

HAP's tortious interference claim also fails because HAP has not—and cannot—allege that BCBSM negotiated any MFN for the purpose of intentionally interfering with one of HAP's specific business relationships.  To plead a tortious inference claim, in addition to identifying a specific relationship, a plaintiff is required to plead that the defendant acted for the specific purpose of harming the relationship between the plaintiff and one of its customers (or prospective customers).[29]  HAP pleads no such act here.

Instead, the basis of HAP's tortious interference claim is BCBSM's negotiation of MFNs with various Michigan hospitals.  But in seeking MFNs, BCBSM did not single out either HAP or HAP's business relationships, and "nothing about" such a general act suggests that BCBSM acted with the requisite malicious intent toward HAP.  *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 287 (6th Cir. 2010).  As a result, HAP has failed to plead the requisite intentional wrongful act by BCBSM, and, for this reason as well, its tortious interference claim should be dismissed.[30]

---

[29] *See BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996); *Cedroni*, 802 N.W.2d at 695; *see also Mich. Podiatric Med. Ass'n v. Nat'l Foot Care Program, Inc.*, 438 N.W.2d 349, 354-55 (Mich. Ct. App. 1989) (*quoting Formall, Inc. v. Cmty. Nat'l Bank of Pontiac*, 421 N.W.2d 289 (Mich. Ct. App. 1988)).

[30] Because HAP has failed to identify any prospective business relationship at issue or any intentional conduct directed at a *specific* relationship, there is no reason to address the remaining elements of the tort in detail.  In Michigan, "[t]he elements of tortious interference with a business relationship are the existence of a valid

## **CONCLUSION**

HAP's claims for monopolization and tortious interference (Counts III-V), and for lost profits in the sale of commercial health insurance (Counts I-II as well as Counts III-V) are time barred.  Further, because HAP fails to plead a plausible geographic market—and because it does not allege the elements required to support its liability theory under *Weyerhaeuser*—HAP's antitrust claims (Counts I-IV) must be dismissed.  Finally, HAP cannot sustain its tortious interference claim (Count V) because it does not identify any valid business relationship or how BCBSM supposedly intentionally interfered with it.  For the foregoing reasons, BCBSM respectfully requests that HAP's Complaint be dismissed with prejudice.

Respectfully Submitted,

/s/ Todd M. Stenerson _____
Todd M. Stenerson (P51953)
Hunton & Williams LLP
2200 Pennsylvania Ave., N.W.
Washington, DC 20037
Phone: 202-955-1500
Fax: 202-778-2201
tstenerson@hunton.com
Dated:  October 20, 2015       *Attorney for Defendant Blue Cross*
*Blue Shield of Michigan*

business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *Dalley*, 788 N.W.2d at 696.  It necessarily follows that if a plaintiff cannot plead the specific relationship that was intentionally interfered with, the plaintiff also cannot plead that the relationship was valid or that defendant knew of it.

25

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies under penalty of perjury that on October 20, 2015 he caused to be served a copy of the foregoing DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS HEALTH ALLIANCE PLAN OF MICHIGAN'S COMPLAINT on all counsel of record in accordance with this Court's policies and procedures for service of electronically filed documents.

/s/ Todd M. Stenerson _____
Todd M. Stenerson
Hunton & Williams LLP
2200 Pennsylvania Ave., N.W.
Washington, DC 20037
tstenerson@hunton.com
P51953

26