IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| HEALTH ALLIANCE PLAN OF MICHIGAN, HAP PREFERRED, INCORPORATED, and ALLIANCE HEALTH AND LIFE INSURANCE COMPANY, | ) ) ) ) ) | Case No: 14-cv-13788-DPH-MJH |
| | ) | Judge Denise Page Hood |
| Plaintiffs, | ) ) | Magistrate Judge Michael J. Hluchaniuk |
| v. | ) ) | |
| BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY, a Michigan mutual insurance company, | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

**CORRECTED**
**REPORT AND DISCOVERY PLAN AND**
**REQUEST FOR STATUS CONFERENCE**

Pursuant to Fed. R. Civ. P. 26(f), Plaintiffs Health Alliance Plan of Michigan, HAP Preferred, Incorporated, and Alliance Health and Life Insurance Company (collectively "HAP") and Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company ("BCBSM") met and conferred (hereafter referred to as the "Rule 26(f) Conference"). The parties now jointly submit the following report and discovery plan. Except as otherwise stated, the parties are in

agreement.   The parties jointly request a status conference at the Court's convenience to resolve the issues that remain in dispute.

## I.    Description of Case

### A.    Jurisdiction

The Complaint alleges federal antitrust claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1-2, brought under 15 U.S.C. § 15, as well as state law claims under Sections 2 and 3 of the Michigan Antitrust Reform Act, M.C.L.A. 445.772 and 445.773, and the common law, over which the Court may exercise supplemental jurisdiction.

### B.    Description of Claims

#### 1.    HAP's Statement of the Case

Plaintiffs Health Alliance Plan of Michigan, HAP Preferred Incorporated and Alliance Health and Life Insurance Company (collectively "HAP") allege that BCBSM entered into most favored nations "plus" clauses in contracts with numerous hospital providers, whereby BCBSM was required to receive a rate lower than that received by other health insurers by a predetermined, substantial percentage, as much as 39% in some cases.   These MFN plus clauses harmed competition in a relevant market, the purchase and sale of hospital services in Oakland County, Michigan, by substantially increasing prices for hospital services and significantly harming purchasers of hospital services, including health insurers competing with BCBSM, such as HAP.   These actions also caused significant

15769164.28

harm to competition among health insurers in a relevant health insurance market in Oakland County, and thereby injured HAP, among others.  These anticompetitive effects were especially pernicious because they enabled BCBSM to maintain and enhance its monopoly power as a purchaser of hospital services in the relevant hospital market and as a seller of commercial health insurance services in the relevant health insurance market.

HAP had a reasonable business expectancy of obtaining continuing business from employers and health insurance agents.  There is a high likelihood that HAP would have retained these relationships and obtained additional such relationships but for BCBSM's interference.  BCBSM knowingly, willfully and wrongfully interfered with HAP's prospective economic relationships by placing anticompetitive pressure on hospitals to adopt MFN plus clauses which raised prices that HAP paid for hospital services.  This harmed HAP's ability to compete with BCBSM on price and interfered with HAP's customers and prospective customers.

BCBSM's actions constituted an unreasonable restraint of trade, in violation of both the Sherman Act and Michigan Antitrust Reform Act, unlawful monopolization, in violation of both statutes, and unlawful tortious interference with prospective advantage.  These actions have caused significant damage to HAP, by increasing the price it paid for hospital services, costing it substantial lost

3

sales, significantly eroding its margins, and seriously harming its reputation among health insurance agents and employers who are purchasers of health insurance services.

### 2.    BCBSM's Statement of the Case

HAP's claims for monopolization, tortious interference, and lost profits are time-barred under the four-year statute of limitations for antitrust claims and the three-year statute of limitations for tortious interference claims.  *See* 15 U.S.C. § 15b; M.C.L. § 445.781(2); *Grain v. Trinity Health*, No. 03-72486, 2008 WL 3833276, at *4 (E.D. Mich. Aug. 13, 2008); *Blazer Foods, Inc. v. Rest. Props. Inc.*, 673 N.W.2d 805, 813 (Mich. Ct. App. 2003).

Further, HAP's antitrust claims lack merit.  First, HAP's proposed "Oakland County" geographic market is implausibly narrow and ignores the geographic and economic realities of the region.  Second, HAP's antitrust claims fail because the MFNs (HAP's claims challenge only differential MFNs or "MFN plus" clauses, so the term "MFN" refers only to differential MFNs) did not harm HAP or competition, there are no factual allegations that BCBSM engaged in predatory bidding, and for many other reasons.  Third, BCBSM's use of MFNs was procompetitive.  Among other things, they helped BCBSM lower its costs, which is not a violation of the antitrust laws.

Similarly, HAP fails to plead a plausible tortious interference claim under Michigan law. HAP does not and cannot identify specific business relationships (either actual or potential) that were intentionally targeted and disrupted by BCBSM's challenged conduct. Further, to assert a tortious interference claim, HAP is required to plead that BCBSM acted for the specific purpose of harming the relationship between HAP and one of its customers. BCBSM's negotiation of MFNs was designed to lower BCBSM's costs, enable BCBSM to reach contractual agreements with hospitals, and protect BCBSM's investments in hospitals efficiently, not to unlawfully interfere with HAP's business relationships.

## II.   **Subjects of Discovery**

### A.   **HAP's Position**

Discovery may include the full range of issues implicated by HAP's Complaint, including without limitation:

1.   The existence and adoption of Most Favored Nations Plus clauses, including BCBSM's plans and intent relating thereto;

2.   The definition of relevant markets and competition within the relevant markets;

3.   BCBSM's market position and monopoly (and/or monopsony) power in the relevant markets;

4.   The impact of Most Favored Nations Plus clauses in the relevant markets on hospital rates, commercial insurers, competition and HAP;

5.   Damages; and

5

6.      Any alleged procompetitive effects of the Most Favored
Nations Plus clauses.

Since most of these issues have been the subject of substantial discovery in the prior MFN cases, HAP believes that discovery in this case can be conducted relatively quickly and efficiently.  HAP does not intend to engage in duplicative or unnecessary discovery.  Moreover, because this case is limited to MFN Plus clauses and HAP has alleged a relevant market in Oakland County, the necessary discovery should be further confined, with only limited discovery necessary beyond Oakland County.

To the extent that Blue Cross wishes to address issues in broader areas, of course, it can do so.  But that broader discovery has already occurred in the prior MFN cases, and there is no reason to redo it.

Of course, this efficient approach depends upon full production of the discovery record in the prior cases, subject to the necessary approvals under the protective order.  All such materials ought to be made available, subject to these protections.

**B.      BCBSM's Position**

Like HAP, BCBSM does not intend to engage in duplicative or unnecessary discovery; however, the discovery conducted in the *U.S. v. BCBSM*, *Aetna v. BCBSM*, and *Shane Group v. BCBSM* cases is not sufficient for purposes of this case.  The present case involves different parties, facts, and issues and, as

6

such, will require additional discovery not previously conducted. BCBSM plans to seek documents, data, and deposition testimony regarding competitive effects, access to the alleged relevant markets, and other aspects of HAP's claims from:

1.      Plaintiffs;

2.      Hospitals in Michigan, with particular emphasis on those in and near Oakland County;

3.      Competitors of both BCBSM and HAP;

4.      Purchasers of commercial health insurance; and

5.      Other entities with relevant information.

**III.   <u>Changes that Should Be Made in the Timing, Form, or Requirement for Disclosures Under Rule 26(a) Including a Statement of When Initial Disclosures were Made or Will be Made</u>**

The Parties have agreed to an exchange of initial disclosures described in Fed. R. Civ. P. 26(a)(1)(A) on May 4, 2016.

**IV.   <u>Discovery Schedule</u>**

**A.      <u>Schedule</u>**

| Event | Date |
|---|---|
| Fact discovery opens | May 4, 2016 |
| Exchange Rule 26(a)(1)(A) disclosures and organizational charts | May 4, 2016 (complete disclosures) |
| Interim Status Conference | June 2, 2016 |

| Event | Date |
|---|---|
| <u>BCBSM Position</u>:  BCBSM provides all documents and data (and all related privilege logs), and all fact witness depositions of defendant's personnel, provided by defendant in *U.S. v. BCBSM*, *Aetna v. BCBSM*, or *Shane Group v. BCBSM* or in response to Department of Justice or State of Michigan civil investigative demands or subpoenas.<br><br><u>HAP Position</u>:  BCBSM provides all documents, data, interrogatory answers and responses to requests for admissions (and all related privilege logs), and all deposition testimony and reports by defendant's personnel and experts, provided by defendant in *U.S. v. Blue Cross*, *Aetna v. Blue Cross* or *Shane Group v. Blue Cross* or in response to Department of Justice or State of Michigan civil investigative demands or subpoenas.[1] | July 29, 2016 |

---

[1] Deposition testimony shall be provided in the formats produced, including video and electronic form.  HAP is responsible for all copying costs associated with production of these materials.

8

| Event | Date |
|---|---|
| HAP provides all documents currently known to it, after a reasonable search of HAP documents, through December 31, 2015, addressing its reimbursement provisions of its contracts and reimbursement negotiations with Beaumont Health, Botsford Hospital (now known as William Beaumont Hospital –Farmington Hills), and St. John Providence, and any other documents and data currently known to it after a reasonable search which HAP claims to support its theory of impact by MFNs at any of those hospitals, subject to later good faith supplementation, including without limitation supplementation after discovery or after analysis by any experts retained by HAP. | July 29, 2016 |
| Deadline to join additional parties | 90 days after discovery opens or 60 days after Answer is served, whichever is later |
| Last day to amend pleadings | 90 days after discovery opens or 60 days after Answer is served, whichever is later |
| Substantial compliance with production of all documents in response to requests made before June 1, 2016. | October 14, 2016 |
| Exchange of Initial Fact Witness List Due – Includes only witnesses parties reasonably expect to call at trial; parties must supplement as they become aware of other such witnesses. | October 31, 2016 |

15769164.28

| Event | Date |
|---|---|
| Deadline for serving document requests, interrogatories, requests for admissions, and Rule 45 subpoenas. | February 3, 2017 |
| Interim Status Conference | May 30, 2017 |
| Fact discovery completed | June 30, 2017 |
| Expert reports and Rule 26(a)(2)(A) disclosures due from Plaintiffs | August 25, 2017 |
| The timing of expert depositions, Defendant's responsive expert reports and disclosures, and rebuttal reports, if any, is disputed by the parties.  The parties provide their positions in subsections IV(B)(1) and (B)(2) below. | **DISPUTED** |
| Last day for expert discovery, including expert depositions | December 22, 2017 |

### B.    Statements Regarding Sequence and Timing of Expert Discovery

The Parties disagree on the sequence of expert reports, disclosures, and depositions, including whether BCBSM can depose HAP's experts prior to submitting its own expert reports and Rule 26(a)(2)(A) disclosures and whether HAP will be allowed to submit rebuttal expert reports.

### 1.    HAP's Position:

It is HAP's position that the parties' experts should submit reply expert reports in response to the other party's expert reports.  BCBSM's position (which is that the experts should not submit reply reports) does not give Plaintiffs' experts

10

the opportunity to respond to arguments raised by BCBSM's experts.  HAP also believes that each party's experts should only be deposed after all expert reports are in, so that Plaintiffs' experts are able to offer opinions at deposition reflecting their understanding of the positions of both parties' experts.  This will avoid "deposition by ambush."  Thus, HAP's proposal for expert discovery is as follows:

| Event | HAP's Proposal |
|---|---|
| Expert reports and Rule 26(a)(2)(A) disclosures due from Plaintiffs | August 25, 2017 |
| Responsive expert reports and Rule 26(a)(2)(B)-(C) disclosures due from Defendant | October 6, 2017 |
| Reply Expert Reports | November 3, 2017 |
| Depositions of witnesses who have provided written reports required by Rule 26(a)(2)(B) may begin | November 3, 2017 |
| Last day for expert discovery, including expert depositions | December 1, 2017 |

### 2.    BCBSM's Position:

BCBSM proposes that following expert reports and Rule 26(a)(2)(A) disclosures from HAP, BCBSM be allowed to depose HAP's experts prior to submitting its own expert reports and Rule 26(a)(2)(A) disclosures.  This will

11

15769164.28

provide BCBSM and its experts the opportunity to discover the basis and reasons for HAP's experts' opinions and to respond meaningfully.   Thus, BCBSM's proposal for expert discovery is as follows:

| Event | BCBSM's Proposal |
|---|---|
| Expert reports and Rule 26(a)(2)(A) disclosures due from Plaintiffs | August 25, 2017 |
| Depositions of Plaintiffs' Experts | September 11, 2017 – September 22, 2017 |
| Responsive expert reports and Rule 26(a)(2)(B)-(C) disclosures due from Defendant | October 23, 2017 |
| Depositions of Defendant's Experts | November 6, 2017 – November 17, 2017 |
| Last day for expert discovery, including expert depositions | December 22, 2017 |

BCBSM's position is that rebuttal reports should not be permitted.   If Plaintiffs' experts are permitted to file rebuttal reports, BCBSM should be entitled to depose those experts regarding their rebuttal reports.

**V.** **Any Issues about Disclosure or Discovery of Electronically Stored Information, Including the Form or Forms in Which it Should be Produced**

12

The parties will negotiate an agreement in good faith to handle ESI-related issues that arise in the litigation. To the extent the parties are required to provide copies to one another of materials received from non-parties, the parties agree to provide copies of the materials in the form in which they were received or otherwise utilized in the proceedings. The parties do not know of any disputed issues regarding disclosure and discovery of electronically stored information, but the parties have not yet completed detailed discussions regarding ESI, including de-duplication protocols. If any such issues arise, the parties will work with each other in good faith to resolve them.

VI.   **Any Issues about Claims of Privilege or of Protection as Trial-Preparation Materials, Including If the Parties Agree on a Procedure to Assert These Claims after Production, Whether to Ask the Court to Include Their Agreement in an Order**

The parties will provide privilege logs related to a document production within a reasonable time following the production of associated documents. Except for good cause shown, privilege logs should be disclosed within 60 days following the production of associated documents.

The parties have agreed that the disclosure of privileged or work-product material will be governed by the pertinent provisions of the Federal Rules of Civil Procedure. The parties agree that the amendments made to Rule 26(b)(5) as of December 1, 2010, shall apply to this action.

## VII.   Any Other Orders that the Court Should Issue Under Rule 26(c) or Under Rule 16(b) or (c)

### A.   Parties' Use of Discovery and Other Information from *U.S. v. BCBSM, Aetna v. BCBSM, Shane Group v. BCBSM,* or Department of Justice or State of Michigan Civil Investigative Demands or Subpoenas

Documents, data, and fact witness deposition testimony produced or provided by parties or third parties in *U.S. v. BCBSM*, *Aetna v. BCBSM*, *Shane Group v. BCBSM*, or in response to Department of Justice or State of Michigan civil investigative demands or subpoenas will be treated as if it were produced, provided, utilized, and taken in this action with the participation of both parties.[2] However, any such documents, data, or fact testimony produced or provided by third parties or by parties other than defendant in such prior actions designated as Highly Confidential or Confidential in those prior actions may not be utilized in this case by either party, unless authorized by the entity or person whose confidential information is being sought, produced separately in discovery in this action, or ordered by the Court.   In either event, documents, data, and fact testimony received from such persons other than the defendant in such prior actions shall receive the protections with regard to confidentiality as provided in

---

[2] However, BCBSM objects to treating the deposition testimony produced or provided by parties pursuant to a civil investigative demand process as if it were produced, provided, utilized, and taken in this action with the participation of both parties.  BCBSM reserves all objections as to the admissibility and otherwise of such materials.

14

the cases in which they were produced, and BCBSM shall promptly provide copies of any such materials possessed by it or the defendant in the prior actions to Plaintiffs subject to HAP's payment of the costs of duplication, upon a showing of written consent from the third party.  BCBSM will provide HAP a list of third parties that provided documents or testimony in *U.S. v. BCBSM*, *Aetna v. BCBSM*, *Shane Group v. BCBSM* or in response to Department of Justice or State of Michigan civil investigative demands or subpoenas.  If either BCBSM or HAP seeks consent from any third party, the consent sought shall be on behalf of both parties.

### 1.   Expert Reports from Prior Litigation

#### (i)   HAP's Position

Expert testimony and reports produced or provided by parties or third parties in *U.S. v. BCBSM*, *Aetna v. BCBSM*, *Shane Group v. BCBSM* or in response to Department of Justice or State of Michigan civil investigative demands or subpoenas should also be treated as if they were produced, provided, utilized, and taken in this action with the participation of both parties.  Portions of such expert reports containing specific identifiable evidence from third parties which is confidential or highly confidential should be governed by the provisions of VII.A above.  BCBSM should provide redacted versions of expert reports and expert testimony from *U.S. v. BCBSM, Aetna v. BCBSM*, and *Shane Group v. BCBSM*

15

(excluding specific evidence which is identifiably from third parties) at the time of BCBSM's production of defendant's proposed trial exhibits from *Aetna v. BCBSM*. Said production shall not be dependent upon receipt of consents upon any third parties. BCBSM shall promptly provide expert reports and expert testimony disclosing such third-party evidence, upon receipt of consents to do so.

Blue Cross is inappropriately attempting to restrict the production of expert reports from the prior MFN cases which HAP would receive in this case. There is no reason to keep from HAP this highly relevant information which can contribute to the more informed and more efficient conduct of discovery and trial in this case.

Blue Cross claims that expert reports in *Aetna v. Blue Cross* are "wholly irrelevant" here. But the *Aetna* case, like this case, involved the impact of MFN clauses on a competitor of Blue Cross during the same time period at issue in this case. While the *Aetna* case covered a larger geographic area (the entire state), and both MFN and MFN Plus clauses, its focus certainly included the geographic areas and specific agreements at issue in this case. *Aetna* addressed MFN Plus clauses (*see Aetna* Complaint (Dkt. 1) ("*Aetna* Cplt.") at ¶¶ 4, 18, 18(A), 39, 43, 45, 45(C), 49, 50); as well as their effects on pricing (*id.* at ¶¶ 3-5, 9, 18(A), 19, 21, 29-30, 41, 47(c), 47(d), 50-52) and on competition (*id.* at ¶¶ 19, 26, 28-30, 41, 47, 47(a), 47(e), 48-49). Similarly, HAP's Complaint addresses MFN Plus clauses (HAP Am. Cplt. (Dkt. 24) ¶¶ 1-5, 11-14); their effects on increased prices (*id.* at ¶¶ 1, 11-

16

14, 20, 37, 39-41, 48, 50); and the resulting harm to competition (*id.* at ¶¶ 3, 5, 37, 44, 48-49, 53).   HAP's claims, like the *Aetna* claims, involve, in part, injury to HAP as a purchaser of hospital services.   *See* HAP Am. Cplt. ¶¶ 50, 55-57, *Aetna* Cplt. ¶¶ 4-5, 47(a), 47(c), 58, 59(d).

Evidence from expert reports in *Aetna v. Blue Cross* is therefore potentially highly relevant here.   There is no reason to exclude the production of these reports (which should involve very little burden), except, potentially, to keep HAP from having access to all the relevant information that has been gathered laboriously in these cases.

### (ii)   BCBSM's Position

Upon receipt of the appropriate consents, BCBSM will provide HAP with a copy of the expert report of Jeffrey Leitzinger, filed in support of the *Shane* plaintiffs' motion for class certification.   However, HAP is not entitled any other expert reports because all other expert opinions and conclusions from *Aetna v. BCBSM* and *Shane Group v. BCBSM* do not fall within the scope of discovery contemplated by the Federal Rules and would be unnecessarily burdensome and prejudicial in this matter because of the introduction of facts and issues wholly irrelevant to the case at hand.   Notably, the *Aetna* and *Shane* matters were coordinated for purposes of discovery only.   Expert reports and expert deposition

testimony were not shared across cases.  BCBSM is prepared to file a motion for a protective order addressing discovery of prior expert reports and depositions.

**2.    Discovery Materials from Prior Litigation and Trial Preparation Materials**

**(i)    HAP's Position:**

BCBSM should provide all trial exhibits and all of defendant's deposition testimony designated for use at trial by Aetna in the *Aetna v. BCBSM* litigation. BCBSM should also be required to produce all interrogatory answers, responses to requests for admissions, and all other materials that were produced in discovery or in response to Department of Justice or State of Michigan civil investigative demands or subpoenas by defendant in *U.S. v. BCBSM, Aetna v. BCBSM*, and *Shane Group v. BCBSM* or any third party, subject to permission by the other parties as outlined above.  There is no reason to restrict the materials that are produced, except to limit the relevant information available to HAP and hamstring its pursuit of its case.  The goal of the discovery process ought to be to uncover the truth, and to the extent that has already occurred in the prior MFN cases, the information ought to be fully available to both parties here.

**(ii)    BCBSM's Position:**

BCBSM objects to HAP seeking discovery of all interrogatory answers, responses to requests for admissions, trial exhibits, and all of defendant's deposition testimony designated for use at trial by Aetna in the *Aetna v. BCBSM*

18

litigation.  Such materials were not shared across cases in *U.S. v. BCBSM*, *Aetna v. BCBSM*, and *Shane Group v. BCBSM*, and similarly, should not be shared in this case.  BCBSM is prepared to file a motion for a protective order addressing discovery of these discrete portions from the prior litigation.  BCBSM is likewise prepared to file a motion for a protective order addressing discovery of this information.

**B.    Confidentiality and Protective Order**

The parties will negotiate a confidentiality and protective order in good faith using the existing Protective Orders from *U.S. v. BCBSM*, *Aetna v. BCBSM*, and *Shane Group v. BCBSM* as guidance.

The parties will include provisions of the supplemental protective order entered with respect to HAP in the *Shane Group v. BCBSM* to protect both HAP and BCBSM data in this matter.

**C.    Summary Judgment**

BCBSM currently expects to seek leave from the Court to file an early summary judgment motion on a narrow issue, reserving the right to file a summary judgment motion on remaining issues, if any, later in the case.  HAP currently expects to oppose BCBSM's request, since HAP believes that Blue Cross' contemplated motion involves very broad issues that will be developed throughout

19

the discovery period.  The parties expect to meet and confer on this issue when it becomes ripe.

VIII. **What Changes Should Be Made in the Limitations on Discovery Imposed Under These Rules or by Local Rules, and What Other Limitations Should be Imposed**

    A.    **Discovery Limits**

        1.    **Written Discovery**

The parties agree that, except for good cause shown, the parties shall be limited to 50 interrogatories (including distinct subparts) per party and 50 requests for admission per party.

        2.    **Depositions**

HAP's Position:  HAP proposes a limit of 20 depositions per side, except for good cause shown.  In light of the fact that (i) substantial discovery has already been taken in *U.S. v. BCBSM*, *Aetna v. BCBSM*, and *Shane Group*; (ii) the focus of this action will be primarily on Oakland County; and (iii) this action is focusing only on MFN Plus contracts, the parties should need no more than 20 depositions.

Blue Cross argues for more than 20 depositions per side based upon the assertion that a smaller number will unfairly benefit HAP because HAP will have access to a substantial number of depositions taken previously in this case, whereas Blue Cross has not previously conducted significant discovery of HAP.

This approach not only reflects an inappropriate view of litigation as "gamesmanship", but does not properly take account of the facts.  The vast

15769164.28

majority of prior discovery occurred outside the Oakland County area which HAP

defines as the relevant market here and is related to MFNs (not MFN Plus) clauses,

which are the sole focus of HAP's Amended Complaint.  Moreover, the discovery

of Blue Cross that has been undertaken to date will likely relieve HAP of the need

to take extensive additional deposition discovery of Blue Cross personnel.[3]

For all these reasons, a limit of 20 depositions per side ought to be more than

sufficient to resolve this additional, relatively narrow case.   Blue Cross'

incremental discovery will likely be limited to HAP personnel.   20 depositions

(double the normal 10 deposition limit) ought to be more than enough to address

the knowledge of HAP personnel regarding the injury and damage it suffered due

to the MFN Plus clauses.

BCBSM's Position:  BCBSM proposes that the Parties shall be limited to 40

depositions per side in total, except for good cause shown.  This number may be

higher depending on how many deponents in the previous cases authorize the use

of confidential depositions in this action.  *See* § VII.A., *supra*.

HAP's proposal to limit depositions to no more than 20 per side limits

BCBSM's ability to take necessary depositions but provides no real limitation on

HAP.  This is because, as stated in § IV, *supra*, BCBSM agreed to provide HAP

---

[3] Blue Cross has taken depositions of two HAP personnel already in the prior MFN
cases.

with more than 30 fact depositions of BCBSM employees previously taken in *U.S. v. BCBSM*, *Aetna v. BCBSM*, and *Shane Group v. BCBSM*.  BCBSM further agreed that these depositions will be deemed "taken" in this action such that HAP can utilize them for all purposes allowed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

There is no equivalent discovery record of HAP employees.  BCBSM will thus be starting virtually from scratch, and will need to take depositions of all relevant HAP witnesses as well as third-party witnesses to prepare its defense.  BCBSM will need to take numerous third-party depositions, particularly hospital depositions.  Although many of the hospitals were previously deposed in the other cases, the depositions did not address certain aspects of HAP's claims (*e.g.*, the contention that Oakland County is a relevant market, and the claim that competition was somehow injured in a market for the sale of hospital services as opposed to the market for health insurance).  Consistent with the prior cases, the number of depositions of HAP employees alone could approach or even exceed 20 depositions.  HAP's proposal, if adopted, would prejudice BCBSM by eliminating necessary depositions but would not affect HAP's ability to take discovery.

### 3.    Role of Honigman in Discovery

15769164.28

BCBSM's Position:   Honigman cannot participate in any discovery, including depositions, of any client previously represented by Honigman in *U.S. v. BCBSM*, *Aetna v. BCBSM*, or *Shane Group v. BCBSM*.

Honigman cannot participate in discovery, including depositions of any HAP executive(s) (like its hospital contract negotiators) that directly negotiated with any client represented by Honigman in *U.S. v. BCBSM*, *Aetna v. BCBSM*, or *Shane Group v. BCBSM*.   Honigman's hospital clients (some of which are in Oakland County) were targets of discovery by BCBSM in the former cases and will be targets of discovery in this case to show that, among other things, health insurance competition and hospital competition extend beyond Oakland County and, further, that MFNs did not have anticompetitive effects in the metropolitan Detroit area or the state.   Honigman obtained confidential and commercially sensitive information regarding its hospital clients' contracting and negotiation strategies in the former cases.   Honigman cannot counsel, advise, or question HAP executives that directly negotiated with its hospital clients without exposing or improperly utilizing (explicitly or implicitly) the confidential and commercially sensitive material learned about its hospital clients.   This issue was raised by BCBSM in its reply in support of its motion for disqualification, *see* Dkt. No. 32 at 5, and was not cured by the consents obtained from Honigman's hospital clients, which described HAP's claims as relating to Oakland County only.   *See, e.g.*, Dkt.

23

No. 53-2.  Because of the narrow description of the case, consenting hospitals would have no reason to know that the HAP executive who negotiated with them also negotiated with other hospitals in Oakland County.  *See, e.g.*, Dkt. 32-4 (Excerpts from the Deposition transcript of Laura Eory, Nov. 12, 2012).

HAP's Position:  Blue Cross' argument seeks (without a motion and without any basis) to substantially interfere with Honigman's representation of HAP in this case.  BCBSM's assertion that Honigman should not be permitted to participate in depositions or discovery of any HAP hospital executives that directly negotiated with any clients represented by Honigman makes absolutely no sense, and has no basis, for several reasons.

First, Blue Cross cites no law or rule supporting its argument, and there is none.  MRPC 1.9(c)(1) says that a lawyer who has formerly represented a client shall not "use information relating to the representation to the disadvantage of the former client. . ."  Honigman has no intention of doing so.  The rule does not impose restrictions on a lawyer based on an unfounded assumption (as Blue Cross raises) that the rule might be violated in the future.  There is certainly no reason why Honigman would have any interest in using its other clients' information to their disadvantage.

Indeed, an examination of the circumstances under which Blue Cross's proposed prohibition would apply shows just how ridiculous it is.  Under Blue

24

Cross's proposal, if Honigman chose to defend a HAP employee being deposed concerning his negotiations on HAP's behalf with regard to Beaumont, Honigman would be forbidden from doing so if that employee also engaged in any negotiations at all with any hospital who Honigman had represented in connection with any of the prior MFN cases, whether or not such issues were or were not at all likely to come up in a deposition.

Second, the issue Blue Cross raises concerns the interest of Honigman's third party clients, not Blue Cross. Those clients have already all signed fully informed waivers of any potential conflict, after receiving copies of the Complaint as well as this Court's Order Denying Without Prejudice Blue Cross' Motion to Disqualify, Granting Blue Cross' Motion to Stay and Setting Dates. See Doc. #41. They were thus fully informed regarding any potential conflict issue. Under the circumstances, there is no basis for any restriction on Honigman's activities.[4]

Third, there can be no conflict issue unless Honigman is directly adverse to its third party clients. This Court found the possibility of such adversity "may" exist because of HAP's claims regarding MFN clauses, which were possessed by

---

[4] Nevertheless, Honigman's intention is not to participate in depositions of, or disputes relating to document requests to, its clients in prior MFN litigation (excluding, of course, HAP and its affiliates). Another firm will do so.

some of Honigman's clients.[5]  *See* Doc. 41 at pp. 8-10.  But Blue Cross' new argument has nothing to do with the legality of MFN clauses.

Fourth, Blue Cross' argument depends upon the assumptions that (a) Honigman possesses confidential information obtained from its third party clients in the course of earlier MFN litigation specifically relating to negotiations between those clients and HAP, and (b) any disclosure would harm Honigman's third party hospital clients.  But little, if any, of the information produced in discovery would have related to negotiations with HAP.  And most of the information in question is now four or more years old.  As such, it is hard to imagine that any disclosure could possibly have any competitive significance or could possibly cause any harm to these third party clients, since it will concern old contracts which have since been superseded.

In any event, the rule does not prohibit counsel acting in situations where he might hypothetically be in a position to use information to a client's disadvantage. The rule prohibits the use of such information, and Honigman will not do so.

Blue Cross is attempting to further hamper HAP's pursuit of its case by raising an issue on behalf of other, sophisticated parties which they have not themselves raised.

---

[5] In fact, most of Honigman's clients did not have MFN Plus clauses, the only clauses at issue in this case.  Many of them also did not have MFN clauses.

26

Respectfully submitted this 5th day of May, 2016.


**HONIGMAN MILLER SCHWARTZ
AND COHN LLP**

s/David A. Ettinger

Honigman Miller Schwartz and Cohn
LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226
(313) 465-7368
dettinger@honigman.com
(P26537)

*Counsel for Health Alliance Plan of
Michigan, HAP Preferred, Incorporated,
and Alliance Health and Life Insurance
Company*

**HUNTON & WILLIAMS LLP**

s/ with consent of Todd M. Stenerson

Hunton & Williams LLP
2200 Pennsylvania Ave., NW
Washington, DC  20037
(202) 955-1500
tstenerson@hunton.com
(P51953)

*Counsel for Blue Cross Blue Shield
of Michigan Mutual Insurance
Company*

15769164.28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 5, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

- ngilman@hunton.com
- bhoffman@hunton.com
- lara.phillip@honigman.com
- rphillips@bcbsm.com
- trheaume@bodmanlaw.com
- tstenerson@hunton.com
- tvandusen@bodmanlaw.com

s/David A. Ettinger
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7368 (p)
(313) 465-7369 (f)
dettinger@honigman.com
(P26537)