**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HEALTH ALLIANCE PLAN OF
MICHIGAN, HAP PREFERRED, INC., and
ALLIANCE HEALTH AND LIFE INS. CO.,

        Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN
MUTUAL INSURANCE COMPANY,

        Defendant.
_____/

Case No. 14-13788

HON. DENISE PAGE HOOD

**ORDER GRANTING IN PART AND DENYING IN PART**
**MOTION TO DISMISS**
**AND**
**SETTING STATUS CONFERENCE**

**I.**    **BACKGROUND**

On October 1, 2014, Plaintiffs Health Alliance Plan of Michigan, HAP Preferred, Incorporated, and Alliance Health and Life Insurance Company (collectively, "HAP") filed a Complaint against Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company ("Blue Cross"), which was amended on November 21, 2014 alleging five counts: Unlawful Agreement in violation of Sherman Act § 1 (Count I); violation of M.C.L. § 445.772, Michigan Antitrust Reform Act ("MARA") (Count II); Monopolization under Section 2 of the Sherman Act, 15

U.S.C. § 2 (Count III); Monopolization under M.C.L. § 445.773 (Count IV); and Tortious Interference with Prospective Advantage (Count V). (Am. Comp., Doc. No. 24)

HAP alleges that Blue Cross, the dominant provider of health insurance in Michigan for decades, implemented a scheme to protect its dominant position and thwart competition from HAP and other competitors. (Am. Comp., ¶ 1) Blue Cross entered into "MFN-plus" contracts with hospitals under which hospitals were required to increase the rates they charged to Blue Cross' competitors, preventing Blue Cross' competitors from purchasing hospital services at prices that were more competitive with Blue Cross. (Am. Comp., ¶ 1) Some of Blue Cross' exclusionary MFN-plus contracts required hospitals to charge HAP (and others) substantially more than Blue Cross–as much as 39 percent more, which reduced competition in the sale of health insurance in the relevant market by inhibiting hospitals from negotiating competitive contracts with Blue Cross' competitors. (Am. Comp., ¶ 3) Blue Cross referred again and again to its better discounts from providers in its sales communications to customers, to agents, and to consultants. (Am. Comp., ¶ 4)

In 2013, the State of Michigan prohibited the use of most favored nations clauses as possible violations of the Michigan Insurance Code, but HAP alleges that Blue Cross' use of MFN-plus clauses in the 2007-2012 period caused substantial

damages to HAP. (Am. Comp., ¶ 5) Even though the MFN-plus clauses no longer exist, the damage to HAP and the harm to competition continue. (Am. Comp., ¶ 5) HAP has suffered damages since at least 2008. (Am. Comp., ¶ 66)

This matter is before the Court on Blue Cross' Motion to Dismiss. Response and Reply briefs have been filed and a hearing held on the matter. Supplemental briefs were filed.

## II.   ANALYSIS

### A.   Standard of Review

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). To survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

    **B.**    **Statute of Limitations**

Blue Cross' first argument is that HAP's claims for monopolization, tortious interference, and lost profits are time barred and that those claims are not subject to tolling based on the class action case, *The Shane Group v. Blue Cross Blue Shield of*

4

*Michigan* (*"Shane"*) (Case No. 10-14360 (E.D. Mich.)). Blue Cross does not challenge in this motion that HAP's claims for hospital overcharges under Counts I and II were tolled by *Shane*. HAP responds that its monopolization, tortious interference, and lost profits claims were tolled by *Shane* and that its Complaint was timely filed once it opted out of the class.

The Supreme Court has held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974). In the event that class certification is denied, individual actions by the putative class may file individual actions within the time that remains on the limitations period. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 346-47 (1983). Without the tolling of the statute of limitations, putative class members would have an incentive to file unnecessary individual lawsuits to protect their rights in the event of a denial of class certification. *Id.* at 349-51. The tolling issue found in *American Pipe* "should not be read ... as leaving a plaintiff free to raise different or peripheral claims following denial of class status." *American Pipe*, 462 U.S. at 354. "[T]he statute of limitations for putative class members of the original class is tolled only for substantive claims that were raised, or could have been raised, in the initial complaint." *Weston v. AmeriBank,* 265

5

F.3d 366, 368 (6th Cir. 2001).

The anti-trust claims of monopolization and lost profit claims are governed by a four-year statute of limitations. 15 U.S.C. § 15b; M.C.L. § 445.781(2). The statute of limitations begins to run on antitrust claims when the plaintiff is allegedly injured. *See Zenith Radio Corp. v. Hazeltime, Res., Inc.,* 401 U.S. 321, 338 (1971). The tortious interference claim is governed by Michigan's three-year statute of limitations. *See* M.C.L. § 500.5805(10). The limitation period in tort actions begins to run at the time all elements, including damages, can be alleged in a proper complaint. M.C.L. § 600.5827.

Blue Cross argues that HAP's monopolization claims were not tolled by *Shane*. In *Shane*, a monopolization claim was initially alleged in the October 29, 2010 Complaint. The monopolization claim was abandoned on June 12, 2012 when an Amended Complaint was filed without the monopolization claim. (Case No. 10-14360, Doc. No. 72) Blue Cross' calculation is that from January 1, 2008, when HAP's monopolization claims accrued, until October 29, 2010, when the initial *Shane* Complaint was filed, 34 months had passed. From the June 12, 2012 Amended Complaint in *Shane* and the time HAP filed its Complaint on October 1, 2014, 27 months had passed, for a total of 61 months, more than five years. The time elapsed when the monopolization claims were not tolled is beyond the four-year

6

monopolization claim statute of limitations.

Blue Cross argues that the lost profits in the sale of commercial health insurance are also time-barred since the *Shane* Complaint did not allege lost profits. The *Shane* claims were for alleged overcharges by hospitals. Blue Cross asserts that the Named Plaintiffs in *Shane* were not competitors of Blue Cross and would not have sought lost profits. Blue Cross argues that the factual and legal nexus of the *Shane* Complaint would not have given rise to HAP's lost profits in the sale of commercial health insurance claim.

As to the tortious interference claim, Blue Cross additionally argues that the *Shane* Complaint did not allege a tortious interference claim. The Named Plaintiffs in the *Shane* Complaint did not compete with Blue Cross and could not plausibly allege harm to a business relationship. Blue Cross claims the factual and legal nexus of the *Shane* Complaint would not have given rise to HAP's tortious interference of a business relationship claim.

HAP responds that like the *Shane* claims, HAP's injury, in part, resulted from being a purchaser of hospital services. HAP claims its Complaint's additional theories of lost profits, monopolization and tortious interference are based on allegations shared with the *Shane Group*. It cites *Lee v. Dell Products, L.P.*, 236 F.R.D. 358, 362 (M.D. Tenn. 2006) and *Abner v. Saginaw County*, 496 F. Supp. 2d 810, 822 (E.D.

Mich. 2007) for the proposition that the claim is tolled until the entire class action is abandoned, not when a class plaintiff abandons a specific claim. HAP argues that even though the Named Plaintiffs in *Shane* amended the initial Complaint to remove the monopolization claim, the claim could have been raised at a later point in time.

Blue Cross replies HAP's lost profits claims are distinct from the *Shane* overcharge claims for tolling purposes because HAP will need to rely on different facts. Blue Cross argues that HAP's business plans, sales and marketing activities, provider contracting and competitive strategy will be central to HAP's case, whereas in *Shane*, the claims for overcharges by hospitals do not involve these facts. For the same reason, Blue Cross argues that HAP's tortious interference claim requires more facts than the *Shane* overcharge claims. Blue Cross asserts that HAP's injuries as alleged in its Complaint occurred when a hospital raised its rates because of an MFN and that its injury began in 2008. (Am. Comp., ¶¶ 13, 40-43, 66) Any lost profit claims are time-barred according to Blue Cross. Because HAP did not allege in its Complaint that there were new MFN rates from those occurring before 2008 which were raised between October 2010 to October 2014 in its Complaint, Blue Cross argues that HAP's lost profit claims are time-barred.

It is noted that HAP does not dispute Blue Cross' calculations of the applicable statute of limitations. The issue then is whether the *Shane* action tolled HAP's claims,

other than its overcharge claims in Counts I and II. In *Weston*, the Sixth Circuit noted that the state law claims were separate and distinct from the federal claims and since the district court in the class action claim had dismissed the federal claim, the class action plaintiff could not have asserted the federal claim and neither could the individual plaintiff in *Weston* since the limitations period had run. *Weston*, 265 F.3d at 368-69. The cases cited by HAP, *Lee* and *Abner*, do not stand for the proposition that the statute of limitations does not begin to run until the entire case is dismissed. Tolling ends when the named-plaintiffs cease or are unable to pursue the claims.

The *Shane* Complaint alleges that "Plaintiffs seek to represent a Class of all individuals and entities (the "Class") that directly paid a hospital in Michigan, that had an MFN Agreement with BCBSM, at a rate contracted for by BCBSM or one of its competitors from January 1, 2007 to the present." (Case No. 10-14360, Doc. No. 72, ¶ 10) Nothing in the *Shane* Complaint alleges that the class included entities which were injured because of competition with Blue Cross. HAP's claims regarding monopolization related to competition, tortious interference or lost profits are not alleged in the *Shane* Complaint. These are separate and distinct claims from *Shane*'s overcharge claim. The statute of limitations as to these claims was not tolled by *Shane*. HAP's claims of monopolization related to competition, tortious interference or lost profits must be dismissed.

9

## C.  One-County Market

Blue Cross claims that HAP's one-county market allegation as to geographic market is implausible and the anti-trust claims must be dismissed. HAP responds that Blue Cross' argument is too narrow and that market definition is a highly fact-based analysis that requires discovery.

The plaintiff bears the burden of defining "the relevant market within which the alleged anticompetitive effects" of the defendant's actions occur. *Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 916 (6th Cir. 2009). The relevant geographic market is "the area of effective competition." *Tampa Elec. Co. v. Nashville Coal Co.,* 365 U.S. 320, 327 (1961). This means "the market area in which the seller operates, and to which the purchaser can practicably turn for supplies." *Id.* Market definition is a highly fact-based inquiry which generally requires discovery. *Foundation For Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001). Courts have rejected overly narrow geographic markets that ignore the "commercial realities" facing buyers and sellers or that unduly limit the "relevant area of effective competition." *Nilavar v. Mercy Health Sys.,* 244 F. App'x 690, 698 (6th Cir. 2007). The Sixth Circuit has held that "when the evidence indicates that a large proportion of consumers within the proposed area in fact turn to alternative sources of supply outside the proposed area,

the market boundaries posited by the plaintiff must be rejected." *Re/Max Int'l, Inc. v. Realty One, Inc.,* 173 F.3d 995, 1017 (6th Cir. 1999).

Because no discovery has been taken in this case, HAP's limitation of the relevant geographic market in this case to one county may support its claim that no such direct adverse conflict exists since market definition is a highly fact-based inquiry. The issue of relevant geographic market was highly contested in the *Shane* case. HAP's definition of the relevant geographic market in its Amended Complaint does not necessarily control in this case, because the definition is dependent on the facts revealed during discovery. The Court denies without prejudice pending discovery Blue Cross' Motion to Dismiss HAP's claim based on a narrow geographic one-county market.

**D.** ***Weyerhaeuser Co. v. Ross-Simmons* Supreme Court Case**

Blue Cross moves to dismiss all of HAP's anti-trust claims because the Complaint does not meet the two-prong test set forth by the United States Supreme Court in *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312 (2007). Specifically, Blue Cross argues that HAP must allege facts that Blue Cross recouped from its short-term losses which is required under the second prong of the test. HAP responds that *Weyerhaeuser* is not applicable since this is not a "predatory bidding" case as alleged in *Weyerhaeuser*.

11

The Supreme Court held in *Weyerhaeuser* that the two-prong test it applied to claims of predatory "pricing" under § 2 of the Sherman Act in *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209 (1993), also applies to claims of predatory "bidding" under § 2 of the Sherman Act. *Weyerhaeuser*, 549 U.S. at 314. The first prong of the test is that a plaintiff must prove that the alleged predatory bidding must have caused the cost of the relevant output to rise above the revenues generated in the sale of those outputs. *Id.* at 325. The second prong is that a plaintiff must prove that the defendant has a dangerous probability of recouping the losses incurred in bidding up input prices through the exercise of monopsony power. *Id.* Absent proof of likely recoupment, a strategy of predatory bidding makes no economic sense because it would involve short-term losses with no likelihood of offsetting long-term gains. *Id.* A recent Sixth Circuit case held that both anti-trust claims alleged in § 1 and § 2 of the Sherman Act require "both below-cost pricing and the likelihood of recoupment to impact, if not fully determine, the plausibility of a predatory pricing conspiracy." *Superior Prod. P'Ship v. Gordon Auto Body Parts Co.,* 784 F.3d 311, 320 (6th Cir. 2015); *see also, Energy Conversion Devices Liquidation Trust v. Trinal Solar Ltd.,* 833 F.3d 680, 685 (6th Cir. 2016).

This Court in the case brought by the Department of Justice, noted that predatory bidding "is not the claim in this case ..." *United States v. Blue Cross*, 809

12

F. Supp. 2d 665, 675 (E.D. Mich. 2011). HAP's claim is that the MFN-plus clauses with the hospitals expressly require that *higher* prices be charged to Blue Cross' *competitors*. This is different from the "predatory bidder" claim where the dominant bidder outbids the competition in order to drive the competition away knowing that the dominant bidder will suffer short term losses, but intends to recoup the losses.

The way the claim in this case is phrased by HAP, like the DOJ case, is not the same as a "predatory bidding" case because "the competitive problem here does not arise from Blue Cross' own bid – it arises from this additional requirement regarding the prices to be charged competitors." (Resp. Br., Doc. No. 48, Pg ID 968) HAP notes Blue Cross correctly stated that HAP did not allege that Blue Cross incurred short term losses. The *Weyerhaeuser* and Sixth Circuit *Superior* case noted above, are inapplicable since HAP's claim, similar to that of the DOJ case, is that "Blue Cross was able to impose higher costs on its rivals, and harm competition, without undergoing any short term losses, and not simply by virtue of its own competitive bidding." *Id.* at 969. As alleged by HAP, Blue Cross did not have to "recoup" anything in order to achieve economic gains. The Court finds that based on its previous ruling in the DOJ case, the allegations by HAP do not constitute a "predatory bidding" case which requires an allegation in the Complaint for recoupment. *Weyerhaeuser* is inapplicable to HAP's anti-trust claims.

13

### III.  CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company's Motion to Dismiss **(Doc. No. 43)** is GRANTED IN PART and DENIED IN PART as more fully set forth above.  The claims for  monopolization, tortious interference of a business relationship, and lost profits only are DISMISSED.

IT IS FURTHER ORDERED that a Status Conference to set dates is scheduled for **May 25, 2017, 2:30 p.m.**  Any updated Joint Report and Discovery Plan must be submitted by May 19, 2017.

> S/DENISE PAGE HOOD
> DENISE PAGE HOOD
> Chief Judge

DATED: March 31, 2017

### CERTIFICATE OF SERVICE

I certify that a copy of this document was served  on March 31, 2017, by electronic or ordinary mail to all parties in interest.

> S/La Shawn Saulsberry
> Case Manager
> (313) 234-5165